J. W. HARRINGTON et al. *v.* J. L. WOFFORD, Guardian.

1. DEFECTIVE SERVICE OF PROCESS—JUDGMENT OR DECREE ON SUCH NOT VOID.—A judgment or decree rendered upon a defective service of process, is not void, but is good and valid until reversed by a direct proceeding in an appellate court, and its validity cannot be called in question collaterally.

2. PROCESS FOR MINORS—WHAT IT NEED NOT CONTAIN.—In an application for an order to sell the interest of minors in real estate, it is not necessary to state whether they have any near relations in this state ; nor is it necessary that the parents of minors should be stated to be such, either in the process or the return thereof, when served with process on account of their children.

3. COMMISSIONER NOT NECESSARY TO ENTITLE PROBATE COURT TO ORDER SALE OF INTEREST OF MINORS UNDER ART. 153, p 464, CODE OF 1857.—The law does not require that commissioners should be appointed to ascertain if the land can be divided, before a probate court can order a sale of the interest of minors in an application under art. 153, p. 464, Code of 1857. This is a matter for the determination of the court upon evidence on hearing the cause.

4. SAME—ART. 153, p. 464, CODE 1857, CONSTITUTIONAL.— Article 153, p. 464, of Rev. Code of 1857, is constitutional, and the power conferred by it may be properly exercised by the probate courts.

APPEAL from probate court of Holmes county. BROWN, J.

It appeared from the record that Josephine Harrington and Ivy F. Harrington were the parents of James W., David and George Harrington.

The condition of the bond executed by Wofford, the guardian, and approved by the court is, that said guardian "shall faithfully account for the proceeds of the sale of said land." All the other facts are sufficiently stated in the opinion of the court.

*W. & J. R. Yerger,* for appellants.

The judgment in this case was not only erroneous, but it is void. 1st. For want of jurisdiction of the persons of the minor; 2d. For want of jurisdiction of the subject-matter.

1. On the first point we need only remark that the rule is universal, that the judgments of all courts proceeding *in personam* are void, unless it has jurisdiction of the parties to the suit.   That can only be required by an appearance of the party in person, or by attorney, or by the service of process upon him, either actually or constructively.   In this case

the minors did not and could not appear, either in person or by attorney, and the process has not been executed upon them, either actually or constructively. It is true that the sheriff returns the citation "executed," but that is not sufficient to give the court jurisdiction of the minor defendants as the statute points out the persons upon whom process against minors must be served.

The provision of the law is, that process shall be served "on an infant personally, and on his father, mother or guardian, if he have any in the state."

The citation in this case is only directed to the infant personally, and if it be conceded that the return "executed" might be deemed to intend a personal service on the infant, he being named in the citation, it cannot, by construction, be made to include a service on a father, mother or guardian, who are not named in the writ, and, therefore, not presumed to have been executed upon a party not named in the writ, without a special return designating upon whom it was served. Service personally upon the minor is not sufficient to give the court jurisdiction. It must also appear to have been served upon the father, mother or guardian. We, therefore, contend that this service is not only insufficient, according to the decisions heretofore made, in not pointing out the manner in which it was served, but that it is void because it does not appear from the citation or the return upon whom service was made, and the record must show affirmatively that process was executed upon the parties designated by law. This is necessary to give the court jurisdiction of the person.

2. That the court had no jurisdiction of the subject-matter is beyond question. The power to sell lands because they could not be fairly and equally divided between joint tenants or tenants in common, without detriment to their respective shares, is entirely statutory. It did not exist at the common law, nor did the court of equity possess it unaided by statute.

By the ancient rules of the common law, partition was

only to be obtained by a writ of partition, sued out at law. In the partition at law, "the exigency of the writ is, that the sheriff do cause, by a jury of twelve men, the partition to be made of the premises, regard being had to the true value thereof, without any authority."

But the counsel for the appellee rely upon the provisions of article 153, p. 464, for the power of the probate court to make this sale. That article authorized the sale of the interest of the wards of Wofford in the land, and so far the probate court had constitutional power to act. But that provision of article 153 which authorized the probate court to "order the whole of such real estate to be sold and the proceeds to be divided among and secured to the persons entitled thereto," is clearly unconstitutional.

The probate court, under the constitution, only had jurisdiction when these proceedings took place; had only jurisdiction "in matters testamentary, and of administration of orphans' business, and allotment of dower; in cases of idiotcy and lunacy, and of persons *non compos mentis*."

On this clause of the constitution it has been decided, that an orphan is a minor who has no living father, and that "the probate court had no jurisdiction over the persons or estates of minors who were not orphans." Stewart v. Morrison, 38 Miss. 417; *Ex parte* Atkinson, 40 ib. 17; Earle v. Crum, 42 ib. 165.

Under this provision of the constitution, and in accordance with the principles laid down in these cases, the probate court clearly had no jurisdiction to order the sale of this tract of land at the instance of the guardian, Wofford. He had a right to ask the court to order a sale of the interest of his wards in the premises, but he had no right to ask a sale of the whole land. The plaintiffs in error were not orphans, and their inheritance could not be sold or they despoiled of it at the instance of their co-tenants and devisees. The sale of the whole tract of land is not orphans' business any more than an action of ejectment or a suit in replevin, in which orphans claim title, can be

called "orphans' business." It would have been as competent for the legislature to confer upon the probate court, to maintain jurisdiction of an action of ejectment or replevin, to recover property of his ward, as to say that, on the application of the guardian of an orphan, the court can take jurisdiction to sell the property of other people in which the ward happens to have an undivided interest, in connection with others. Orphans' business is business in which the management and conduct of the estate of the orphan and the dealings and accounts between him and his guardian are concerned, and does not include suits for the recovery of property claimed by third parties, or suits for the sale and disposition of the property third parties may hold in connection with the orphan, and may have adverse interests.

*Johnston & Johnston*, for appellee.

1. The first error assigned is, that the original process in the proceedings below was not served according to law, and that the mere return "executed" is insufficient. We freely admit that such a return is insufficient. We are aware that it has been decided, in several cases, that a judgment without notice, and without the appearance of the party, is a nullity, but in this case there is a mere defective return on the process; a guardian *ad litem* was appointed for the Harrington heirs, and he filed his answer, under an order of the court below, reciting that it appeared satisfactorily to the court that the minor heirs had been duly served with process. The recital, in a decree by the probate court for the sale of lands, that all persons interested were duly cited to appear, etc., is sufficient to support the sale. Harris v. Ransom, 24 Miss. 504. In the case under consideration, the decree makes this recital, and hence the decree is good. The recital is, that a citation had been returned, as to all of the resident parties, "duly executed." We cannot go behind the recitals of the decree, and vacate process for a mere informal return.

Every presumption is indulged in as to the existence of
facts recited in a decree made by a court of competent juris-
diction.   Hardy v. Gholson, 26 Miss. 70.   A judgment can
only be attacked collaterally, when it is void.   Work v.
Harper, 24 ib. 517; Wall v. Wall, 28 ib. 409.   Where
the court has jurisdiction to render the judgment, no error,
not affecting the jurisdiction, will render the judgment void.
Such errors cannot be collaterally considered, and cannot
affect a purchaser at a sale under such judgment.   McGoon
v. Scales, 9 Wall. 23 ; Cooper v. Reynolds, 10 ib. 309.

We come now to a consideration of the second assignment
of error, which asserts that "no bond was executed by
Wofford, the guardian, securing the proceeds of the sale to
all the devisees in the will."   This assignment is not main-
tainable.   The record shows that Wofford gave bond with
security approved by the court, in the penalty of $25,000,
conditioned that he should, as guardian, faithfully account
for the proceeds of the sale of the land.   Although we
do not concede that any bond was necessary in such a
case as this, yet, for the sake of the argument, waiving
that point, we contend that the bond of Wofford, above
referred to, complies strictly with all the statutory require-
ments.

The third error assigned is, that all the lands were ordered
to be sold and the proceeds divided among the devisees,
but required no bond to secure the portions coming to the
general devisees.   If we comprehend this assignment at all
it is not well taken in point of fact, for the final decree for
the sale does recite that Wofford had previously filed his
bond, with the approval of the court, conditioned that he
should divide the proceeds of the sale equally between all
of the legatees.

The sixth alleged error is, that no commissioners were
appointed to certify to the court below that the lands were
incapable of division.   The statute does not require this to
be done.   The decree recites that the probate court was
satisfied, from the proof, that such was the fact.   It does

not matter how the court became thus satisfied.   None of the parties contested the allegation, broadly made and shown by the petition, that the lands could not be divided without great loss to all the legatees.

Now, there is a statute in this state, providing that adult joint-tenants and tenants in common, may have division or sale of land by petition to a judge of the high court, or of the circuit court or of the probate court ; and therein it is provided, that commissioners shall be appointed to make the sale ; and that, if divisions cannot be made, those commissioners shall so report to the judge, and that the judge may then order a sale of the whole of the lands. Rev. Code, 1857, p. 319, art. 59.   The proceeding in the case at bar was a petition in court, by a guardian, for the sale of lands, and hence the law above cited, and on which this assignment of error seems to rest, has no application whatever.

On that point in the case which alleges that the record does not show that three of the nearest relatives of the minor heirs were not cited to contest the petition for sale, we call attention to the fact that the father and mother were cited, and that there is no evidence to show that the minors had any other relatives in the state.   The provision of the statute is, that three, at least, of the nearest relatives shall be cited, ''if there be any in the state.''   Rev. Code, 1857, p. 463, art. 151.   It is assumed, by opposite counsel, outside of the record, that there was a third of the near relatives in the state.   The presumption is, that the probate judge did his duty in this respect and complied with the law.   On the points above made, see also Hawks, admr., v. Neal et al., 43 Miss. ; Minor v. Prest. and Selectmen of Natchez, 4 Smedes & Marsh. 602 ; Bland v. Muncaster, 24 Miss. 62.

On the question of the jurisdiction of the probate court of Holmes county over the case, we submit the following remarks : The constitution of this state, of October, 1832, established the old probate courts of the state, and defined their jurisdiction to extend to ''all matters testamentary and of

administration in orphans' business," etc.    Const., art. 4, §
18.    The grant of jurisdiction embracing "all matters testa-
mentary and of administration," is certainly broad and com-
prehensive, and was designed to confer full power over all
questions relating to wills and testaments.    Legislating under
that constitution, it is provided in our Rev. Code of 1857, that
where land should be devised to several devisees, some one
or more of them being minors, and the metes and bounds
not being fixed, the guardian of the minors might petition
the court to sell the interests of the minors in such lands,
or that the court might order the whole of the real estate
to be sold, and the proceeds divided among the persons
entitled thereto.    Rev. Code, 1857, p. 464, art. 153.    We
contend that this act is constitutional, and that the act
embraces only a subject-matter of jurisdiction conferred on
the probate court by the constitution itself.    It was only a
legitimate exercise of legislative discretion to provide the
mode and manner, and the proper lines in which the power
of the court should be exercised.    The constitution only
gives a general jurisdiction in minors' business.    This was
subject to regulation by the legislature, and so far perfectly
competent, therefore, for the legislature to give the jurisdic-
tion over the lands as contained in art. 153.

Again, the old constitution of 1832 gave to the probate
court jurisdiction in all "orphans' business."    Was not
this proceeding in orphans' business as well as in a matter
testamentary?    Who are the petitioners who asked for the
sale of the lands?    They are orphans, children, having no
parents living, as shown by the record, and for whom J. L.
Wofford was acting as guardian.    It was, then, the business
of these orphans which the court below was transacting,
and the jurisdiction was clearly given by the constitution
of 1832.    We admit that the constitution framed by the
convention in 1865 and the present constitution of the state
use the term "minors' business" in defining the jurisdic-
tion, instead of the expression "orphans' business," as used
by the constitution of 1832.

We admit, also, that this change of expression was designed to extend the jurisdiction, so as to embrace all minors, whether orphans or not. But what has that to do with the question of jurisdiction as presented by the record ? We say that, even under the restricted jurisdiction defined by the constitution of 1832, the statute above quoted was constitutional, as it was a testamentary matter, and a matter relating to the "business" of the orphans who petitioned the court for a sale of the lands.

We are aware that this court has decided, in three cases, that, under the constitution of 1832, the old probate courts could not appoint guardians for minors whose father was alive. The case of Stewart v. Morrison, 38 Miss. 417, is the leading one of these cases. We are at a loss, however, to perceive how those decisions apply to the case at bar. There was no application, in this case, for the appointment of a legal guardian for any minor having a living father. True it is, that, in the progress of the case, a guardian *ad litem* was appointed for the minor heirs of Josephine Harrington, and that their father was then alive. But those heirs had no legal guardians.

Can it be contended that, under the decision in the case cited, asserting that legal guardians could not be appointed for minors having living fathers, that the court intended to assert the absurd doctrine that probate courts had no jurisdiction, in the progress of causes, to appoint guardians *ad litem* for minor parties who might be brought in by process as the proceedings went forward ? Surely not. And that was the only step taken by the court below as to the guardianship of the Harrington minors.

All three of the cases in this court, deciding that minors, with living fathers, could not be made wards, were adjudications on direct applications for the mere appointment of legal guardians, and the question of the property rights of minors was not embraced. Stewart v. Morrison, 38 Mich. 417 ; *Ex parte* Atkinson, 40 ib. 17 ; Earle v. Crum, 42 ib.

165. Hence we submit that the authorities do not apply here.

The power to sell all the land is clearly given by the statute we have cited, and we totally deny the proposition that a chancery court could alone exercise such a power. We submit, then, that this court must hold that the probate court of Holmes had jurisdiction over the persons and property in this case, and that the act conferring that jurisdiction is constitutional.

PEYTON, C. J.:

It appears from the record in this case, that James Torrey departed this life, leaving a last will and testament, dated July the 17th, 1858, by which he gave and devised to his four daughters, Octavia Wofford, Ann Eliza Minter, Mary Jane Torrey and Georgiana Torrey, each one-fifth of two thousand and fifty-eight acres of land, situated in Holmes county, in this state, and the other fifth of said land he gave and devised to the children of his daughter, Josephine Harrington; and that James W. Harrington, David Harrington and George Harrington, are the children of the said Josephine, by Ivy F. Harrington, her husband; that the said Mary Jane and Georgiana were infants under the age of twenty-one years, and that Jefferson L. Wofford was appointed their guardian by the probate court of said county of Holmes; and, as such guardian, he filed his petition in said probate court, alleging that said land is so situated that an equal division thereof cannot conveniently be made among said devisees, and prays for an order to sell his ward's shares or interest in the land, or the whole of said land, for the purpose of a division of the proceeds of the sale thereof among the devisees as the will directs. Whereupon, a citation was issued on the 24th day of August, 1859, returnable at the ensuing October term of the court, commanding the sheriff to cite Ivy F. Harrington, Josephine L. Harrington, James W. Harrington, David Harrington, George Harrington and Octavia Wofford, to

appear at said term of the court, to show cause, if any they can, why the prayer of the petition should not be granted. To this process the sheriff made the following return: "Executed September 13, 1859;" John Minter and Ann E. Minter, residents of the state of Alabama, were duly notified by publication of the application for a decree to sell the land devised as aforesaid.

At the October term, 1859, of said probate court, it appearing that James W. Harrington, David Harrington and George Harrington were minors under the age of twenty-one years, and had no guardian, the court appointed James M. Stigler their guardian *ad litem*, who thereupon filed their answer to the petition. And the said Jefferson L. Wofford having given bond to secure the appropriation of the proceeds of the sale to the persons entitled thereto, the court made a decree for the sale of said land. And, in pursuance of said decree, the land was sold by the said guardian, Wofford, who reported the sale to said court at the December term thereof, 1859, which was approved and confirmed by the said probate court on the 22d day of December, 1859.

From this decree, James W. Harrington, David Harrington and George Harrington prosecute this writ of error, and make the following assignments of error:

1. The return "executed" was not a sufficient return.

2. No bond was executed by Wofford, the guardian, securing the proceeds arising from the sale of the land to all the devisees in the will.

3. The court ordered all the land left by James Torrey to be sold and the proceeds divided among the devisees, but required no security given for the payment of the portions of the devisees.

4. There was no allegation in the petition of the guardian for the sale of the land, as to whether the minors had any near relations in this state, and none as such were cited.

5. The parents of J. W., David and George Harrington,

as such were not served with process on account of their children.

6. There is no evidence that commissioners were appointed to see if the land could be divided.

7. The probate court had no jurisdiction to decree a sale of the land, because the land was not susceptible of division, that power belonged entirely to the chancery court.

The first and last assignments of error, going to the jurisdiction of the court, seem, very properly, to be regarded by counsel for the appellants, as presenting the main questions in the cause for our consideration and determination.

It is insisted that the decree of the court below, ordering a sale of real estate, is not only erroneous, but void, for the want of sufficient return of the service of process upon the defendants. We do not think so; there is a very clear and obvious distinction between a total want of service of process and a defective service of process as to their effect in judicial proceedings. In the one case, the defendant has no notice at all of the suit or proceeding against him. The judgment or decree in such case, it is conceded, is *coram non judice* and void, upon the principles of law and justice. In the other case, the defective service of process gives the defendant actual notice of the suit or proceeding against him, and the judgment or decree in such case, although erroneous, would be valid until reversed by a direct proceeding in an appellate jurisdiction, and its validity cannot be collaterally called in question. And this view of the law is believed to be sustained by reason, principle and authority. The case of Smilk v. Bradley, 6 Smedes & Marsh. 492, decides that a defective return of process presents the question of error or no error.

In the case of Campbell v. Hays, 41 Miss. 562, the purchaser of property at the administrator's sale, when sued upon his promissory note given for the property thus bought, defended on the ground that the decree of the probate court, authorizing the sale of the property, was void, being made without proper service of process on the dis-

tributees, and without service of process on the fathers of two of said distributees who were minors, having no guardians. The court, in a well-considered opinion delivered by Judge Ellett, say : "We think it proper to say that we have not held that judgments and decrees are absolutely void, and may be collaterally impeached, merely on the ground that the return of the service of process is not made in the formal manner prescribed by the statute. On the contrary, we are of opinion that where a judgment by default is taken upon a return which purports to show that the process has been actually executed, such judgment is valid and binding whenever it comes collaterally in question, although the defendant might reverse it upon writ of error, on the ground of the insufficiency of the return." It was held, that the decree of sale in that case, made by the probate court, founded on a defective return of process, was not void, and until reversed by a direct proceeding in an appellate tribunal, it must be regarded as a valid order of sale. In the case under consideration, the return on the process is defective, according to the repeated adjudications of this court, and for that reason the decree is erroneous.

We think the second and third assignments of error are not well taken. The record shows that the guardian gave a bond which was approved by the court, which we think was sufficient to secure the proper application of the proceeds of the sale, and the court refer, in the order of sale, to the fact of the guardian having filed his bond with the approval of the court for the purpose of securing a division of the proceeds of the sale among the devisees.

The fourth, fifth and six assignments will be considered together. It is not deemed necessary, in an application for an order to sell the interest of minors in real estate, to state whether the minors have any near relations in this state. Nor is it necessary that the parents of minors should be stated to be such, either in the process or the return thereof ; when served with process on account of their children, they are presumed to know each other without any special

designation. The object of the statute, in requiring service of process on the father or mother of an infant defendant without a guardian, is to procure the presence of the parent for the purpose of guarding and protecting the interests of the child. In the case under consideration, Ivy F. Harrington and Josephine L. Harrington, his wife, were not devisees nor was either of them, nor had they, or either of them, any interest in the land sought to be sold ; they could not be affected in any way by the decree, and their connection in this proceeding can only be accounted for upon the idea that Wofford, the guardian, thought it necessary, in compliance with the statute, to have process served on them on account of the infancy of their children, James W. Harrington, David Harrington and George Harrington, who were devisees under the will. These children were minors without a guardian, and in serving process on them as infant defendants, the statute requires that process be served on their father or mother also. Rev. Code, 489, art. 64. And under this provision of the statute, in order to make assurance doubly sure, process was served upon both the parents at the same time it was served upon their infant children. The law does not require that commissioners should be appointed to ascertain if the land could be divided. This is a matter to be determined by the court upon evidence on the hearing of the cause.

This brings us to the consideration of the seventh and last assignment, which impeaches the validity of the decree of sale, on the ground of the want of jurisdiction in the court of the subject-matter of the decree. This is a proceeding under art. 153 of the Rev. Code, 464, which provides that, when lands, tenements or hereditaments, shall descend to, or be devised to, heirs or devisees jointly, one or more of whom are minors, and an equal division thereof cannot conveniently be made, the guardian of such minor may petition the probate court of the county in which the letters were granted, for an order to sell his ward's share or interest in the land, and the court, after summoning the co-heirs or co-devisees, may proceed to hear such application ; and, if it should

deem it proper, may make a decree of sale of the ward's interest as in other applications for the sale of real estate by guardians, and the sale and report thereof shall be made in like manner, and subject to all the provisions of other sales made by guardians; or the court may order the whole of such real estate to be sold, and the proceeds to be divided among and secured to the persons entitled thereto. It is objected that so much of this provision, as authorizes the court to make an order to sell the whole tract, is unconstitutional and void so far as it authorizes a sale of the interests of the adults in the land; this objection, we think, is not sustainable. The power of the probate court to order a sale of real estate is not derived from the constitution, but from the statute. It is the exercise of a power conferred by legislative act, like that given to the probate court to decree the sale of lands of devisees and heirs by the executors and administrators, for the payment of the debts of the decedent. The probate court, as to the jurisdiction conferred by the constitution, is a court of original jurisdiction; and the terms, "all matters testamentary and of administration," as used in the constitution, embrace only matters which concern that species of property which is the subject of administration by executors and administrators, and which vested in the personal representative. The real estate does not vest in the personal representative, and is not, therefore, the subject of administration at common law, but descends upon the heirs of the deceased, or goes to the devisee; and, hence, it has been held that the power to deal with it is conferred by statute, and not by the constitution. On the death of the ancestor, the title to his real estate vests in his heir or devisees, and can only be divested by their own voluntary deed or act, or by the judgment or decree of a court of competent jurisdiction. The probate court has no jurisdiction over land for any purpose whatever, by the constitution. It is only by virtue of the special conditional power conferred by the legislature on the happening of the event named in the statute, that the probate court

can assume jurisdiction over the land which has vested in the heir or devisee. Campbell v. Brown, 6 How. 234 ; Root v. McFerrin, 37 Miss. 46 ; Hanks v. Neal, 44 ib. 212, and Hollman v. Bennett, ib. 322.

If this be a correct view of the question under consideration, as to the power of the probate court to order the sale, it follows that the provision of the statute under which these proceedings were had, is not liable to the objection raised to it, and was enacted in the legitimate exercise of legislative power. This court has decided in the case of Hanks v. Neal, that this statute is not unconstitutional. That the probate court derives its power in cases like this, not from the constitution, but from legislative grant, giving it a special and limited jurisdiction over realty. On account of the defect in the return of process, the decree is erroneous, and for that reason alone must be reversed.

The decree is reversed and the cause remanded.