Webster v. Daniel & Straus.

WEBSTER v. DANIEL & STRAUS.

1. JUSTICE OF THE PEACE: *Jurisdiction not presumed.*
Nothing can be presumed which is necessary to give a justice of the peace jurisdiction; but when jurisdiction appears upon the face of the proceedings, its action cannot be collaterally attacked for mere error or irregularity. The same presumption that it was correctly exercised will arise as prevails with reference to the action of courts of superior and general jurisdiction.

2. JURISDICTION: *In personam; Irregular service.*
Courts can acquire jurisdiction over a defendant only by service of summons either actual or constructive, or of some other process issued in the suit, or by his appearance to the action in person or by attorney. And objections for mere irregularity in the process or in the manner of its service must be made in the action. They cannot be set up in a collateral proceeding.

3. WARNING ORDER: *Proof of publication.*
When a warning order from a justice of the peace has been properly published, the failure to make proof of the publication by the person and in the form prescribed by law, is a mere irregularity which will not defeat the jurisdiction, and can not be taken advantage of in a collateral proceeding.

4. ATTACHMENT: *Warning order and affidavit; Priority.*
When a warning order and an affidavit for attachment are made at the same time, the affidavit will be considered to take effect first.

Webster v. Daniel & Straus.

5.  WARNING ORDER:  *Certainty as to court issuing it.*
    A warning order from a justice of the peace in the usual form, signed by the justice, sufficiently designates the court in which the defendant is summoned to appear, though the particular justice's court is not specified in the body of the order.

6.  ATTACHMENT:  *Affidavit under Sec. 348, Mansfield's Digest.*
    The affidavit required by *Sec. 348, Mansfield's Digest,* of the non-existence of personal property before an order for sale of attached lands can be made, is not required where a constable has levied an attachment on land and certified that the defendant has no personal property.

7.  SAME:  *Indemnifying bond before sale; Presumption.*
    In an action by the former owner for the recovery of land from a purchaser at a sale under an attachment, his deed from the sheriff duly acknowledged and recorded and containing the recitals required by the statute is *prima facie* evidence of the legality and regularity of the attachment proceedings, and in the absence of evidence whether the indemnifying bond required by the statute was or was not filed before the sale, it will be presumed that it was filed.

8.  SAME:  *Return of nulla bona before filing transcript from J. P.*
    The failure of a constable to make a return of *nulla bona* before the transcript of a J. P. is filed in the clerk's office, is at most but an irregularity, which can be taken advantage of only by the defendant in the judgment by a direct proceeding to quash the process issued upon the judgment.

9.  SAME:  *Confirmation of sale.*
    A sale of land under an execution issued by the clerk of the circuit court upon the transcript of a justice of the peace in proceedings by attachment needs no confirmation by the court.


APPEAL from *Lonoke* Circuit Court.
Hon. F. T. VAUGHAN, Circuit Judge.


*John Hallum* for Appellant.

1.  The warning order is indefinite—it is based upon the constable's return, which is contradictory and in the alternative, and not a sufficient basis for an attachment or warning order. See *sub. sec. 6, sec. 4725, Gantt's Dig., Waples Att., p. 270–1, and authorities.* A warning order that is vague and indefinite is void. It supplies the place of a summons. See *6 Lea., Tenn., 521; Waples Att., 268–70 and notes; 40 Ark., 719.*

2. The affidavit for attachment is made upon information and belief only, and is void. *Waples, pp. 229–30.*

3. No proof of publication was made according to law. *Waples, pp. 275–6–7.*

4. The sale was never approved or confirmed by any court. *Gantt's Dig., sec. 428.* The doctrine of intendment and presumption cannot be invoked to supply fatal defects in title.

In the exercise of special statutory powers, as under attachment laws, there is no presumption of jurisdictional facts. *Waples on Att., 229–30; 52 Ala., 55; 61 Mo., 33; 30 Ind., 63; 31 Id., 150; 43 Ala., 568; 23 Ark., 41; 34 Id., Wells v. Rice; 25 Id., 52.*

5. No affidavit was made that no personal property could be found, nor any indemnifying bond given. *Gantt's Dig., sec. 426; Ib., 4727–9.*

6. The transcript filed in the office of the clerk of the circuit court was not a compliance with the law, and not sufficient to base an execution upon.

*Jno. C. & C. W. England* for Appellees.

The appellant brought ejectment three years after the sale, and now seeks to disregard the appellees' title, alleging that it is void because of defects apparent upon the face of the record. Unless the defects or irregularities are of such a nature as to render the judgment of the justice absolutely void he will necessarily fail. Justices' courts are courts of limited authority, and no presumptions of jurisdiction are indulged in their favor, but having acquired jurisdiction, the same intendments will be indulged in as in the case of superior courts. Courts not of record are like special agents—we must see their authority before regarding their decisions as lawful; but, seeing it, we are to respect it. Their authority is not the less certain because speci-

fied and confined. It is well settled that when the jurisdiction of a court of limited and special authority appears upon the face of its proceedings, its action cannot be collaterally attacked for mere error or irregularity. *Freeman on Judgments, sec. 524.*

We are therefore led to the inquiry as to what the record must show in this case to settle the question as to whether the court had jurisdiction in this case. *Freeman on Judgments, sec. 611,* says, in referring to judgments *in rem :* Two jurisdictional inquiries must be answered in the affirmative in order to uphold the judgment or decree, viz :

1. Did the court have the authority to determine the subject-matter of the controversy ?

2. Did the court have jurisdiction over the thing proceeded against as a defendant ?

To determine if the court has authority over the subject-matter is simply to decide whether the court has authority in a given case to hear and determine a matter ; or, as *Waples* states it : "The question of authority is whether the action required of the court is judicial or extra-judicial ; whether the tribunal has authority of law to decide the issue presented." *Waples Pro. in rem., sec. 84.*

The Act of 1875, page 111, says in substance that whenever a constable, to whom an order of attachment is directed, cannot find any personalty on which to levy, he may seize any real estate, etc., belonging to the defendant. This court, in *Bush v. Visant, 40 Ark., 124,* has decided this act to be constitutional.

Hence the constable in this case, if he could find no personal property, had the right—nay, it was his duty—to seize the real estate. In his return he expressly states that defendant had no personalty, and this return cannot be contradicted. *Freeman on Executions, sec. 264.*

The debt sued on was less than one hundred dollars, hence it follows that the court had authority to determine the subject

matter; that is, it had jurisdiction over the amount sued on, and had the right to hear and determine whether or not the attachment against the land should be sustained; provided, the further inquiry, "did the court acquire jurisdiction over the thing," can be answered in the affirmative. Now, did the court acquire this jurisdiction to proceed against the thing? How does the court acquire jurisdiction in such cases? First, by seizure of the land. Second, by publication against the defendant, warning him to appear and defend. When the property is seized and this notice given, the jurisdiction is complete after the expiration of the time given to appear, and the court is then vested with the power to hear and determine the cause and give final judgment. *Waples Pro. in rem., sec. 87; Freeman on Judgments, sec. 126 and notes.*

Now, it cannot be denied that the warning order was made and published, the record shows this fact, and the record imports absolute verity, and cannot be gainsaid in this collateral proceeding. But, counsel for appellant says the court issued the warning order without sufficient authority of law. Let us see if this is true. The constable, in his return, says that he did not make personal service upon the defendant because he had left the county of his residence (Lonoke) to avoid the service of a summons, or so concealed himself that a summons could not be served upon him. *Subdivision 6 of sec. 4989, Revised Statutes,* says that whenever either of these facts are stated in the return of the officer the clerk shall make an order warning the defendant, etc., and *sec. 4990, Ibid,* says that the court may make such warning order upon the requisite facts, meaning, of course, any of the grounds authorizing publication of a warning order, being satisfactorily shown by affidavit or other proof, that is, satisfactorily shown to the court. The legislature certainly intended by this section to leave this question as to when a warning order should be issued to the court; provided always, the court was of opinion from the affidavit, or other proof, that

some of the grounds laid down in the statutes justified the is-
suance of the warning order. *Freeman,* in his work on *Judg-
ments, sec. 522,* says : "Sometimes certain facts are required
to be proved to a court of limited jurisdiction as grounds for
issuing process. In such cases the tribunal must necessarily
judge for itself upon the sufficiency of the proof offered. If
there be any evidence, though slight and inconsiderable, having
a legal tendency to prove the facts, the process will be held
valid until the action of the court in issuing it be set aside by
some direct proceeding." *Morrow v. Weed, 4 Iowa, 77.*

The next objection made by appellant's counsel is that the
affidavit for attachment is vague and insufficient. We confi-
dently submit there is nothing in this objection. The ground
of objection as urged by counsel for appellant is that after stat-
ing the necessary facts which would authorize the court to issue
an order of attachment, he proceeds to give the source of his.
information (as is claimed) as to grounds of attachment by sim-
ply saying "as shown by the return of the constable to the writ
of summons issued him." This clause was unnecessary but did
no harm when inserted in this affidavit. It was inserted evi-
dently as additional proof of the matter set up as grounds for
the attachment. It in nowise depended on the return of the
constable. All other objections raised by counsel do not go to
the jurisdiction of the justice, but to the exercise of that juris-
diction.

"A plain line must be drawn between jurisdiction and the
exercise of jurisdiction. A court may have the right and power
to determine the status of a thing, and yet may exercise its.
authority erroneously. After jurisdiction has attached in any
given case all that follows is exercise of jurisdiction. The right
to inquire into jurisdiction by another court, in a collateral
action, is confined to the question of authority to hear and de-
termine the cause." *Waples Pro. in rem, sec. 85; Freeman on*
*Judg., sec. 126.*

A further objection is urged by counsel that no bond was filed before judgment as provided by second subdivision of *Sec. 5190, Revised Statutes.* The Acts of 1875 provides that no sale shall take place until such bond as is now provided by law shall be filed. In *Bush v. Visant*, this court say the bond referred to in this act is evidently the bond referred to in above section, and in that case decided that in order to make the sale valid this bond must be filed before sale. In *Bush v. Visant* it was admitted by counsel that this bond had not been filed. In this case the record is silent, but in appellant's brief he states that· the bond was filed with the clerk before sale, but not with the justice before judgment was rendered.

We make this quotation from *Bush v. Visant:* "*Sec. 41 Ch., 17 of Gantt's Dig.* required a bond of indemnity to be executed to the defendant in attachment before execution could issue, or his property sold. In *Rust v. Rives. 24 Ark. 359,* the court said it was unquestionably law that no execution could be awarded, or property sold until such bond was executed. But as the court had ordered an execution it would be presumed that the law had been complied with. Here there is no room for presumption, for on the trial of this case appellee admitted that no bond had been executed."

From this quotation it would seem that when the record is silent the court would presume that this bond had been filed, and this seems sound in principle, for every presumption is indulged in in favor of courts of limited jurisdiction that are indulged in in favor of courts of record where jurisdiction is shown, and certainly the filing of the bond before entering judgment cannot be necessary to give the court the power to hear and determine the cause, and until the cause is heard and determined in favor of the plaintiff, the bond is not required; hence it cannot be required to complete jurisdiction; and in deciding in the case quoted from, that when this omission is admitted at the trial it rendered the sale void, is not in line with the current

authority upon this question, which holds that no error in the exercise of jurisdiction once properly acquired will render the judgment of the court void, but only voidable, subject to be set aside by a direct proceeding for that purpose. We are aware that proceedings out of the course of the common law, as is this case, must be strictly construed, and that in exercising special authority granted by the statutes, the requirements must be strictly followed. But we submit that this does not change the general and universal rule so long recognized by the courts, that any irregularity in the exercise of jurisdiction will not render the judgment vulnerable to collateral attack. *Waples Pro. in rem, sec. 112.*

Upon the question of notice see the following: *Paine v. Moreland, 15 Ohio, 435; Williams v. Stewart, 3 Wis., 773; Buch v. Abbott, 6 Vt., 586; Drake on Attachments, secs. 437–8.*

If two grounds of attachment are stated in the affidavit in the disjunctive, it is nevertheless good, provided the grounds are both sufficient to sustain it. *Waples Pro. in rem, sec. 587, citing the following: Commercial Bank v. Ulman, 10 S. & M., 411; Cannon v. Logan, 5 Porter, 77; Wood v. Wells, 2 Bush, 197; Hardy v. Trabue, 4 Id., 644; Conrad v. Magee, 9 Yerger, 428; Goss v. Gowing, 5 Richardson, 477; Hopkins v. Nichols, 22 Tex., 206; Bosbyshell v. Emanuel, 12 S. & M., 63; Van Alstyne v. Erwine, 1 Kernan, 331; Kleuk v. Schwalm, 19 Wis., 111.*

And if good in support of attachment, by analogy they would support the issuance of a warning order.

BATTLE, J. Peter Webster, the appellant, was the owner of the land in controversy. Being indebted to Daniel, Straus & Co., as evidenced by his promissory note, they sued him on the note before a justice of the peace of Lonoke county. A summons was issued, and returned not served, because the defendant, Peter Webster, could not be found, the constable stating

in his return that the defendant had left the county of his residence (Lonoke) to avoid the service of the summons, or so concealed himself that a summons could not be served on him. And thereafter, on the 13th day of April, 1878, the justice of the peace made a warning order in the following words:

"STATE OF ARKANSAS, } 
COUNTY OF LONOKE, }

*In Justice's Court, Lonoke County.*

"Daniel, Straus & Co., vs. Peter Webster.

"The defendant, Peter Webster, is warned to appear in this court within 30 days, and answer the complaint of plaintiff filed herein against him.

"Given under my hand, this 13th day of April, 1878.

"(Signed,)                    T. C. BEARD, J. P.;"

and ordered that this warning order be published for four consecutive weeks in the Lonoke Democrat, a newspaper published in Lonoke county, and appointed A. D. Lawhorn attorney *ad litem* for the defendant.

On the same day, Dan Daniel, one of the plaintiffs in that action, made and filed an affidavit in the following words:

"The plaintiff, Dan Daniel, for Daniel, Straus & Co., states that the claim in this action against the defendant, Peter Webster, is for money due upon contract, evidenced by a promissory note, and that it is a just claim; that they ought, as he believes, to recover thereon eighty-four 84-100th dollars, and that said Peter Webster has left the county of his residence to avoid the service of a summons, as shown by the return of a constable to the writ of summons issued herein.

"(Signed,)                    DAN DANIEL."

"Subscribed and sworn to before me, this 13th day of April, 1878. (Signed,)                    T. C. BEARD, J. P.;"

and filed the bond required to obtain a general order of attachment, conditioned according to law, which was approved. And on the same day the justice issued an order of attachment,

returnable on the 18th day of May, 1878, and adjourned his court to that day. On the 18th day of May, 1878, Lawhorn filed his acceptance of the appointment of attorney *ad litem*, and the constable to whom the order of attachment was directed made return that no personal property of defendant could be found on which to levy the attachment, and that he had executed the order of attachment upon the above-mentioned tract of land by posting copies thereof in a conspicuous place thereon, and that defendant not being found no copy or notice was served on him; and the plaintiffs, Daniel, Straus & Co., filed with the justice proof of publication of the warning order, showing that it was published for four consecutive weeks in the Lonoke Democrat, a newspaper printed and published in the county of Lonoke; and the cause was continued until the 18th day of June, 1878, on which day, the plaintiffs appearing, the cause was heard, and the plaintiffs were adjudged to be entitled to recover the amount sued for and the attachment was sustained, and a transcript was ordered to be filed with the clerk of the Lonoke circuit court in order that the land attached might be sold in the manner prescribed by law to satisfy the amount adjudged to be due the plaintiffs. A certified transcript of the judgment and docket entries of the justice of the peace in the cause was filed with the clerk of the Lonoke circuit court, who thereupon issued an execution, directed to the sheriff of Lonoke county, commanding him to sell the land, which he did, on the 5th day of September, 1878, and Dan Daniel and Gus Straus, the appellees herein, became the purchasers thereof, they being the highest and best bidders. The land not being redeemed in twelve months the sheriff conveyed it to Daniel & Straus, the purchasers, by deed, reciting therein the names of the parties to the execution, the date when issued, the date of the judgment, the time, place and manner of the sale, and other particulars recited in the execution, certificate of sale, and the failure to redeem in twelve months. On the 4th day of October, 1881, Peter Webster brought this

action in the Lonoke circuit court, against appellees, for the recovery of the land, it being in their possession. Judgment was rendered in favor of appellees. Peter Webster filed a motion for new trial, which was overruled, and he saved exceptions and appealed.

The only question involved in this case is, was the sale made by the sheriff void? Appellant insists it was. The following reasons which he gives for saying so, are only necessary to be noticed by us:

1. The affidavit for the attachment was insufficient.

2. The warning order was indefinite, uncertain, and was prematurely issued.

3. The proof of the publication of the warning order was not made as required by law.

4. No affidavit was made by Daniel, Straus & Co., before the issuance of the execution by the clerk, to the effect that Webster had no personal property out of which their debt could be made.

5. No indemnifying bond was given before rendering judgment.

6. The execution was based on an insufficient transcript.

7. The sale made by the sheriff was never approved or confirmed by any court.

Nothing can be presumed which is necessary to give a justice of the peace jurisdiction. "Courts not of record," says *Freeman on Judgments,* "are like special agents—we must see their authority before regarding their decisions as lawful; but seeing it, we are to respect it. Their authority is not the less certain because specified and confined. It is well settled that when the jurisdiction of a court of limited and special authority appears upon the face of its proceedings, its action can not be collaterally attacked for mere error or irregularity. The jurisdiction appearing, the same presumption of law arises—that it

1. JURISDIC-
TION: Of J. P.
not presumed.

was rightly exercised—as prevails with reference to the action of a court of superior and general authority." *Freeman on Judgments, sec. 524.*

2. IN PERSO-NAM: Irregular service. .There is a difference between a want of jurisdiction and a defect in obtaining jurisdiction. The defendant must be brought within the power of the court by service of summons, either actual or constructive, or of some other process issued in the suit, or by the voluntary appearance of the defendant in person or by his attorney, in order to give the court jurisdiction. If, however, "there is any irregularity in the process, or in the manner of its service, the defendant must take advantage of such irregularity by some motion or proceeding in the court where the action is pending. The fact that the defendant is not given all the time allowed him by law to plead, or that he was served by some person incompetent to make a valid service, or any other fact connected with the service of process, on account of which a judgment by default would be reversed upon appeal, will not, ordinarily, make the judgment vulnerable to a collateral attack." *Freeman on Judgments, sec. 126.*

In *Harrington v. Wofford, 46 Miss., 41*, the court said : " It is insisted that the decree of the court below, ordering a sale of real estate, is not only erroneous, but void, for the want of sufficient return of the service of process upon the defendants. We do not think so. There is a very clear and obvious distinction between a total want of service of process and a defective service of process, as to their effect in judicial proceedings. In the one case the defendant has no notice at all of the suit or proceeding against him. The judgment or decree in such case, it is conceded is *coram non judice* and void, upon the principles of law and justice. In the other case, the defective service of process gives the defendant actual notice of the suit or proceeding against him, and the judgment or decree in such case, although erroneous, would be valid until reversed by a direct proceeding in an appellate jurisdiction, and its validity can not

be collaterally called in question. And this view of the law is believed to be sustained by reason, principle and authority. The case of *Smith v. Bradley, 6 Smeed & Marsh, 492*, decides that a defective return of process presents the question of error or no error." *Campbell v. Hays, 41 Miss., 562; Isaac v. Price, 2 Dil., 351; DeTar v. Boone County, 34 Iowa, 490; Glover v. Holman, 3 Heisk., 519.*

In *Ballenger v. Tarbell, 16 Iowa, 492*, Mr. Justice Dillon, in delivering the opinion of the court, said: "The original papers in this action were not before the court, but the transcript shows that the original notice was served by the constable on the 6th day of February, 1860, on the wife of Robertson, and as to Tarbell, the service, as recited in the justice's transcript, was as follows: 'On the 7th day of February, 1860, I, H. H. Wilson, a justice of the peace, served the said notice upon John Tarbell, by reading the same to him personally, in the city of Keokuk, who confessed judgment;' and on the 11th day of February, 1860, the justice rendered judgment against the defendants, without any appearance by them. That this service, as to Tarbell, was defective, is apparent, because the statute requires five days' notice, and here were only four. It may also be defective because served by the justice himself, and not the constable. It was, therefore, clearly erroneous in the justice to have rendered judgment against Tarbell on this service. It would have been, without doubt, reversed on writ of error. But it was erroneous simply, and not void. It is not a case where there is *no* service at all, but a case where there was a *defective* service. The justice erred in deciding that this service authorized him to render judgment against Tarbell; but neither Tarbell nor his assignee can question the validity of this judgment or claim to have it treated as *void* in this collateral proceeding. *Bonsall v. Isett, 14 Iowa, 309; Cooper v. Sunderland, 3 Id., 114; Morrow v. Weed, 4 Id., 77; Boker v. Chapline, 12 Id., 204.*"

Webster v. Daniel & Straus.

3. WARNING ORDER: Proof of publication. In the suit before the justice of the peace the warning order supplied the place of a summons. The publication of it in the manner prescribed by the statute constituted it a constructive notice to the defendant. The proof of publication filled the place of a return upon a summons. If the warning order was properly published the failure to make the proof of publication by the person and in the form prescribed by law, would be a mere irregularity, and would not defeat the jurisdiction of the justice, and could not be taken advantage of by a collateral proceeding, as shown by the authorities cited. The constructive notice would, nevertheless, have been given.

It is contended by appellant that the proof of the publication of the warning order, made in the suit before the justice, was not made as required by law. There was no evidence of the proof of publication of the warning order, except a certified copy of the docket entries of the justice, which the statute makes competent evidence, from which it appears that proof of publication of the warning order was filed, showing that the warning order was published for four consecutive weeks in the Lonoke Democrat, a newspaper printed and published in Lonoke county. As already shown by the authorities cited, this is sufficient for the purposes of this action.

It is insisted by appellant that the warning order was prematurely made. The statute provides that justices' courts shall be governed in attachment suits by the rules in force in the circuit courts, so far as they are applicable; that when it is stated in the return, by the proper officer, of a summons against the defendant, that the defendant has left the county of his residence to avoid the service of a summons, or conceals himself so that a summons can not be served on him, the clerk shall make upon the complaint an order warning such defendant to appear in the action within thirty days from the time of making the order; and that when such statements are made in such return it shall be equivalent to the statement of such facts

in an affidavit for attachment.  This statement was made in the return on the summons in the suit before the justice, and the warning order was made after the return, and not prematurely.

On the same day the warning order was made an affidavit was filed, in which affiant states that "the defendant had left the county of his residence to avoid the service of a summons, as shown by the return of a constable to the writ of summons" issued by the justice.  But it is insisted that the affidavit is defective, because it appears to have been made upon information and belief.  We think not.  According to every reasonable intendment the reference to the return of the constable was only made as evidence of the truth of the statement sworn to, and for no other purpose.  The affidavit and warning order being made at the same time, the affidavit will be considered to take effect first.  The rule is, " where two acts are done at the same time, that shall be considered to take effect first which ought, in strictness, to have been done first in order to give it effect."    *Hubbardston L. Co. v. Covert, 35 Mich., 254.*

<div style="margin-right">4. ATTACH-MENT: Warning order and affidavit. Priority.</div>

It is further contended that the warning order is vague and uncertain, because it does not show before which justice the defendant was warned to appear.  It was susceptible of but one interpretation, and it is clear that he was required to appear before the justice making the warning order.  No other reasonable construction could have been placed upon it.

<div style="margin-right">5. WARNING ORDER: Certainty as to court issuing it.</div>

The fourth reason given by appellant why the sale should be held void is, the affidavit required by *Section 348 of Mansfield's Digest* was not filed.  No such affidavit was required or was necessary.  *Section 4125 Mansfield's Digest* says: "Whenever the constable, to whom any order of attachment issued by any justice of the peace of this state shall be directed, can find no personal property upon which to levy the same, he may and shall levy such order upon any lands, tenements, town lots, interest in or equity of redemption in any real property belong-

<div style="margin-right">6. ATTACH-MENT: Affidavit under Sec. 348, Mansf. Digest.</div>

ing to the defendant in such attachment, subject to execution
by the laws of this state, and make his return accordingly, de-
scribing in said return the property so levied upon." That was
done in this case. The return of the constable shows that he
could find no personal property on which to levy the order of
attachment. *Section 4126* says what shall be done after this.
before the land can be sold, and how it shall be sold. It says.
" In all cases by suits by attachment in which lands, tenements,
town lots, interest in or equity of redemption in any real prop-
erty, shall have been levied upon as provided for in the preced-
ing section, the plaintiff, if he obtain judgment thereon, shall
be entitled to a transcript of the judgment and proceedings in
said cause, and, upon the filing of such transcript in the office
of the clerk of the circuit court of the county in which such
judgment was obtained, the same shall be entered in the docket
of the circuit court for common law judgments, and shall
thenceforth have the same force and effect of a judgment
rendered in said circuit court, upon which an order of sale shall
be issued by the clerk of said court, directed to the sheriff of
the county, under which the property so seized and levied
upon and condemned to be sold by said judgment shall be
sold in the same manner, and with the same notice, as sales of
real property under executions are made. *Provided*, no such
sale shall be made until the plaintiff shall execute bond to the
defendant in the manner now prescribed by law."

7. SAME: In-
demnifying
bond before
sale.
Presumption. 

But appellant says the sale was illegal and void, because.
no indemnifying bond was filed before the sale, as required by
*Secs. 4126 and 5190 of Mansf. Dig.* There is no positive evi-
dence that such bond was or was not filed. The deed executed
by the sheriff to appellees contained the recitals required by
the statute, and was duly made and executed, acknowledged
and recorded, as required by law. The statute in such cases.
made and provided says such a deed shall be evidence " of the
*legality* and *regularity* of the sale of the land so conveyed until

Webster v. Daniel & Straus.

the contrary be made to appear." The presumption, then, is,. the bond was filed according to law. *Mansf. Dig., secs. 668,. 3075; Bush v. Visant, 40 Ark., 124.*

The sixth objection of appellant to the sale is, that the execution under which it was made, was based on an imperfect and insufficient transcript. If there is any defect in the transcript filed with the clerk, on which the execution was issued, it is, it did not contain a copy of any bond, proof of publication, order of attachment and every other paper filed with the justice, which were not copied on his docket. We fail to see wherein this omission affected appellant injuriously. If such an omission amounts to anything, it is an irregularity which does not make the sale void, and can be of no avail in an action like this.

The statute requires a return of *nulla bona* to be made upon an execution issued by a justice of the peace, before a transcript of the justice's judgment on which it was issued can be filed in the circuit clerk's office for the purpose of reaching realty. In *Jordan v. Bradshaw, 17 Ark., 112,* it was held that the failure of the constable to make the return of *nulla bona* on the execution before the transcript is filed in the circuit clerk's office is, at most, an irregularity, and as such, can only be taken advantage of by the defendant in the judgment, in a direct proceeding interposed for the purpose of quashing the process issued upon such judgment.

8. SAME:— Return of *nulla bona* before filing transcript from J. P.

The last objection to the sale we shall notice is, it was not approved or confirmed by any court. Be this as it may, it was not required and was unnecessary. The sale was not made by the court, or under the supervision of any court. It was required to be made under an execution and in the manner prescribed by law for the sale of land under execution, and no report thereof was required to be made to any court.

9. SAME:— Confirmation of sale.

Judgment affirmed.