Bobby Lynn SMITH

v.

H.R. "Mike" HOLZAPFEL, et al.

Paul Wayne SMITH

v.

H.R. "Mike" HOLZAPFEL, et al.

Civ. A. Nos. B–82–610–CA,
B–82–739–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 17, 1990.

Kerwin Stone, Beaumont, Tex., for Bobby Smith.

Donald Carona, Jr., Orange, Tex., for Paul W. Smith.

Richard C. Hile, Beaumont, Tex., Britt Plunk, Kountze, Tex., for defendants.

## FINAL JUDGMENT

COBB, District Judge.

Following a bungled, violent but brief attempted jailbreak, this action was brought under Title 42 U.S.C. § 1983 by the plaintiff Bobby Smith, for money damages against H.R. "Mike" Holzapfel, Sheriff of Hardin County, Texas, and three of his deputies, Jimmy Butler, Gary Schofield and Randy Martin, individually, and not in their official capacities. A companion suit was filed by Paul Wayne Smith, Bobby Lynn Smith's brother, and the cases were consolidated for discovery and trial.

Both plaintiffs are now inmates at the Texas Department of Corrections, each having pleaded guilty to offenses of aggravated robbery, and separate offenses of escape. Each received a sentence of thirty

years for aggravated robbery, and ten years for the escape charges.

The attempted jailbreak, and the actions of the law officers thwarting it, provide the basis of the suit. In the evening of March 23, 1981, Bobby Lynn Smith was incarcerated in the Hardin County jail in Kountze, Texas, awaiting trial on a charge of robbery. Bobby Smith's brother, Paul Wayne Smith, was in custody awaiting trial for attempted capital murder, aggravated robbery, and illegal use of a patrolman's vehicle. The Smith brothers were in custody in the Hardin County jail in Cell Block 301. Daniel Bowden and Ramon Gomez, a detainee being held for the Immigration and Naturalization Service, were also being held in 301. No felony charges were pending against Gomez.

Bobby Smith testified he had long planned to escape from the Hardin County jail, and together with Bowden devised a scheme to break out of jail. Some time before the escape attempt, detainees Bowden and Bobby Smith had torn approximately fifteen bed sheets in half, tied the remnants together and made a sturdy rope of about seventy feet in length. This had been stored in the crawl space between the ceiling and the roof of the building. Both Smith brothers admitted this in direct testimony.

There is a crawl space between the steel ceiling of the jail and the concrete roof of the jail and courthouse. A broken skylight was available above the chapel for them to climb up to the roof, lower the rope of sheets, and complete their escape.

Bobby Smith testified his brother, Paul Smith, knew of the plan but refused the invitation to join. At approximately 10:15 p.m. on March 23rd, Paul Smith attracted the attention of jailer Martin, and requested permission to make a phone call. Martin arranged for Paul Smith to make the call from the deputy's desk. As Paul Smith was returned to the cell block, the deputy opened the interior cell door and Bobby Smith and Bowden rushed forward and attacked him using their fists, heads, arms, elbows, knees and boots. They quickly overpowered Martin and inflicted considerable physical injuries upon him. The Smith brothers testified Paul Smith did not participate in the attack on jailer Martin. Martin, however, testified that all three detainees did attack him and specifically recalls being kicked by Paul Smith in the head and ribs before he lost consciousness.

Fortuitously, the intercommunication system at the jailer's desk was left on an open circuit to the Sheriff's office. Other officers on duty heard jailer Martin's calls for help and his shouts that an escape attempt was under way. Sheriff Holzapfel and Chief Deputy Max Langston entered the elevator on the first floor of the jail to go to the aid of Martin on the third floor. Jimmy Butler and Albert Witte, two deputies, used the stairway from the first floor to the third floor. Chief Deputy Langston was using crutches and his leg was in a cast as a result of an injury previously sustained in an automobile accident.

Pursuant to the Sheriff's policy, none of the officers involved possessed or carried weapons to the third floor of the jail. The configuration of the third floor did not allow deputies Witte and Butler to enter the third floor when they reached the top of the stairs. Only after the elevator arrived at the third floor were they able to enter one door of the elevator and enter the third floor through the front door of the elevator. Sheriff Holzapfel, upon his arrival, had opened both elevator doors.

After jailer Martin was beaten unconscious by the detainees in the escape attempt, he was dragged by the plaintiffs into Cell Block 301. The plaintiffs then retreated to the day room which is in a corridor with two other cells, and all four of the inmates were sitting on a metal table in the day room after they had stolen the jail keys from jailer Martin, together with his badge and other identification, and had unlocked the door from Cell Block 301 into the jail chapel.

Plaintiffs contend they ascertained their planned jailbreak was doomed to fail, and they abandoned their escape attempt. Plaintiffs further contend, and indeed testified, they were quietly and meekly waiting

in the day room for the peace officers to arrive when Sheriff Holzapfel stepped out of the elevator. They further testified they were all beaten that night, the following morning and intermittently until March 27, 1981.

Bobby Smith testified he was kept in a padded cell for two days without adequate food, and with no sanitation facilities, including no shower, no sink, no toilet, no clothes except one sock (it was not made clear to the court which appendage it covered), no bed clothes, and no blanket. He testified he was transferred to Cell 303 two days later and beaten then once again by Officer Schofield and jailer Martin.

The Smith brothers testified they would have "done anything" to get out of Sheriff Holzapfel's jail since they feared for their lives. In any event, on March 27, they pleaded guilty to the aggravated robbery and escape charges and were immediately transferred to Texas Department of Corrections in Huntsville, Texas.

Holzapfel testified when he arrived on the third floor with Langston, he entered Cell Block 301 and saw the four inmates in the day room. The day room has a very small door and only one person can enter or exit at a time. Holzapfel further testified he heard the inmates state, "It's just Mike and he's alone," and with that, first Bobby Smith, followed by Paul Smith, Bowden, and the Mexican national came out of the day room and attacked him. Bobby Smith swung at him, missed, and Holzapfel hit him with his fist and pushed or twisted him to one side. Next came Bowden, and Holzapfel was able to land one or more punches to Bowden's body and push him into the cell block.

Then Paul Smith emerged and became engaged in a struggle with Holzapfel. By this time deputies Butler and Witte had arrived on the third floor through the elevator and were on the scene. Butler went to subdue Bobby Smith and the ensuing fight lasted approximately five minutes. The two of them went down another corridor almost to its end, and Bobby Smith was finally subdued at the end of the corridor

adjacent to the entrance of the isolation or padded cell.

Another deputy finally handcuffed Paul Smith and locked him in one of the cells in Block 301. Bowden was also restrained and locked in a separate cell. Gomez, the Mexican national, apparently did not know what was going on and rushed forward towards Holzapfel to protest his innocence, but Holzapfel could speak no Spanish and the Mexican national could speak no English. Holzapfel hit him in the face and knocked him down.

After the melee ended, jailer Martin was taken to the hospital, treated and released. He was brought back to the jail at about 1:00 a.m. March 24, 1981, and photographed. A "mug shot" was obtained of his face, and that picture is in evidence before the court. It shows numerous cuts, bruises and swollen places on his face, and he did not return to duty for two weeks while he was recovering from those injuries.

Bobby Smith was kept in the isolation cell until approximately daybreak of March 24, 1981, when he was transferred to another cell. Despite Bobby Smith's testimony, the court finds he was not further attacked by Martin, who was physically incapacitated and not at the jail for several days, nor by any other deputy prior to entry of his plea of guilty on the two charges.

The court further finds that Paul Smith was not further physically injured after the night of March 23, 1981, during the escape attempt. Medical records from Texas Department of Corrections are in evidence and show that one healing bruise on Smith's right jaw was noted upon his initial medical examination when he was transferred to T.D.C. This was the only evidence of any injury found on that examination. X-rays of his rib cage were taken, but they reflect no report of any damage, nor have the X-rays been produced.

Ramon Gomez was turned over to the Immigration authorities approximately two weeks after the attempted jailbreak and apparently was deported; in any event, he is not a plaintiff in this suit. Bowden

cooperated with the authorities and helped break up a burglary and robbery ring unconnected to the Smiths. At the time of this escape attempt, Bowden was a fugitive, having escaped from a state penal institution in Georgia. Written statements were taken from Gomez, Bowden, and the deputies involved on the night of March 23rd and the morning of March 24th, 1981. Neither party wished to introduce these statements into evidence, but the court requested they be included in the records as court's exhibits. No objection was made by counsel for plaintiffs or defendants.

On further questioning, Sheriff Holzapfel testified that he intended to use sufficient force to restrain the detainees and defeat the attempted jailbreak. With the timely arrival of his deputies on the third floor of the jail, he was successful. Having observed the witnesses, their demeanor, their candor or lack thereof; examined the exhibits, the statements, the jail plan; photographs of Cell Block 301, the day room, the elevator, the padded cell, Cell 303–3; and all other relevant exhibits and evidence, the court makes the following:

## FINDINGS OF FACT

### 1.

Plaintiff, Bobby Lynn Smith, is an individual, currently serving a ten-year sentence for escape and a thirty-year sentence for aggravated robbery. He is an inmate of the Eastham Unit, Texas Department of Corrections in Lovelady, Texas. Plaintiff, Paul Wayne Smith, is an individual presently serving a ten-year sentence for escape and a thirty-year sentence for aggravated robbery. He is an inmate of the Eastham Unit, Texas Department of Corrections, Lovelady, Texas.

### 2.

H.R. "Mike" Holzapfel was the Sheriff of Hardin County, Texas, in 1981, and has continuously served as Sheriff since that time. Defendants Jimmy Butler, Gary Schofield and Randy Martin were deputy sheriffs and/or jailers at the Hardin County jail during all times pertinent hereto.

### 3.

On or about the 13th day of January, 1981, Bobby Lynn Smith was duly incarcerated in the Hardin County jail, having been charged with the offense of robbery.

### 4.

On or about January 13, 1981, Paul Wayne Smith was transferred to the Hardin County jail from the Tyler County jail. Paul Wayne Smith was charged with the offenses of attempted capital murder, robbery, and illegal use of a patrolman's vehicle.

### 5.

Subsequent to their incarceration, Bobby Smith, Paul Smith, Ramon Gomez and Daniel Bowden were placed in Cell Number 301 at the Hardin County jail.

### 6.

Some time prior to March 23, 1981, Bobby Smith, Paul Smith and Daniel Bowden devised a scheme to break out of the jail and in furtherance of such scheme, the three individuals in question took sheets from their beds, tore them into strips and made a rope out of the sheets approximately 70 feet in length.

### 7.

On the evening of March 23, 1981, jailer Martin was making his rounds when Paul Smith asked to make a phone call. Martin advised Paul Smith that upon completion of his rounds, if Smith still wished to make a call, Martin would allow him to do so, and at approximately 10:15 p.m., jailer Martin returned to Cell Number 301, and allowed Paul Smith to leave the cell and make a phone call.

### 8.

Sometime around 11:00 o'clock p.m., Paul Smith finished his phone call, and was taken back to his cell by jailer Martin. As jailer Martin opened the door to Cell Block 301 Daniel Bowden and Bobby Lynn Smith approached the door with Bowden asking if he too could make a phone call. Suddenly jailer Martin was attacked by Bobby Lynn Smith and Daniel Bowden, knocked to the floor, and then was repeatedly hit and kicked by Paul Smith, Bobby Smith and Daniel Bowden, and was subsequently

beaten unconscious. Martin was then pulled back into the corridor of Cell Block 301. During the attack, Daniel Bowden took the jail keys and opened the door to the corridor leading to the chapel, and Bobby Smith took Jailer Martin's badge and identification card.

9.

When jailer Martin was attacked by Bobby Smith, Paul Smith and Daniel Bowden, he began to scream and cry out for help. Sheriff Holzapfel, Deputies Max Langston, Jimmy Butler and Albert Witte were in the Sheriff's office on the first floor of the jail when they heard Martin screaming for help on the open jail intercommunication system. All four officers immediately proceeded to the third floor. Butler and Witte went up the back stairs and Sheriff Holzapfel and Langston used the elevator.

10.

Sheriff Holzapfel was the first officer to arrive at the third floor and found jailer Martin lying unconscious on the floor in a pool of blood. At that time, the Sheriff was attacked by Bobby Smith. Holzapfel sidestepped him and forced him through the door toward Butler. Immediately thereafter, Daniel Bowden and Paul Wayne Smith attacked the Sheriff, and a fistfight ensued between and among Holzapfel, Butler, Witte and the three prisoners.

11.

None of the officers in question were armed with weapons at the time of the attempted escape.

12.

During the fight between the officers and Bobby Smith, Paul Smith and Daniel Bowden, blows were struck by all parties with their fists, arms and feet.

13.

After the three detainees were subdued, they were placed in separate cells and the jail was secured. At the time, all three detainees were searched.

14.

During the course of the search of Bobby Smith, jailer Martin's badge and identification card were found in defendant Bobby Smith's pocket.

15.

Jailer Martin was subsequently taken to the hospital where he received medical treatment for the beating he received.

16.

The credible evidence establishes that Bobby Lynn Smith, Paul Wayne Smith and Daniel Bowden each participated in the attempted escape in the evening of March 23, 1981.

17.

The credible evidence establishes that during the course of the escape attempt, jailer Martin was attacked by Bobby Smith, Paul Smith and Daniel Bowden, and that these three inmates subsequently attacked Sheriff Holzapfel. A fight ensued between these prisoners and Holzapfel, Butler and Witte during the officers' attempt to stop the escape attempt, secure the jail and place the detainees in custody.

18.

The court finds that Sheriff Holzapfel, Deputies Butler and Witte, used only that force necessary to subdue and take Bobby Smith, Paul Smith and Daniel Bowden back into custody and once this occurred that no further force was used by any of the officers.

19.

After the incident on March 23, 1981, plaintiffs Bobby Smith and Paul Smith, and Daniel Bowden were placed in separate single cells and remained there until the 27th day of March, 1981, when each individual appeared before the Honorable Clyde Earl Smith, District Judge, Hardin County, Texas, and pled guilty to various offenses.

20.

The credible evidence does not support the allegations by plaintiffs Paul Smith and Bobby Smith that after the attempted escape was stopped, they were repeatedly struck or beaten by the officers.

21.

The credible evidence establishes that neither Bobby Smith nor Paul Smith sustained serious physical injuries in the fights which broke out during the course of the

attempted escape. Their injuries were minor, involving only abrasions and bruises, and the credible evidence does not establish that the officers exhibited "deliberate indifference" to the alleged medical needs of the plaintiffs.

### 22.

The plaintiffs' allegation of retaliation and threats by the officers subsequent to the incident in questions is not supported by the evidence.

### 23.

The court finds that the plaintiffs' allegations that they were denied food, clothing, and other necessities after the escape attempt is not supported by the credible evidence.

## CONCLUSIONS OF LAW

### 1.

This court has jurisdiction of this matter pursuant to 42 U.S.C. § 1983, and 28 U.S.C. § 1331.

### 2.

■ In order to establish a claim for violation of a detainee's civil rights for failure to provide reasonable and necessary medical care and treatment, he must establish that Sheriff Holzapfel or the deputies in question exhibited "deliberate indifference" to the alleged medical needs of the plaintiffs. *Kersh v. DeRozier*, 851 F.2d 1509 (5th Cir.1988); *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The evidence in question does not reflect either a deliberate indifference to the prisoners' injuries or that such injuries were serious.

### 3.

■ When plaintiffs claim excessive force was used in quelling the jailbreak under 42 U.S.C. § 1983, the court must first identify the specific constitutional rights allegedly infringed by the challenged application of force, and must apply the appropriate constitutional standard. *Graham v. Connor*, — U.S. —, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The plaintiffs, being pre-trial detainees, are not entitled to 8th Amendment protection, since the 8th Amendment attaches only after conviction and sentence. *Id.*

■ As pre-trial detainees, the plaintiffs are entitled to either 4th or 14th Amendment protection. Whether the 4th Amendment provides individuals with protection against deliberate use of excessive physical force beyond the point at which arrest ends and pre-trial detention begins has been left unanswered by the Supreme Court. *Id.* Once pre-trial detention begins, however, the due process clause of the 14th Amendment attaches to protect the detainee from excessive use of force. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). This court believes that in the instant case, only the 14th Amendment due process clause protection applies, but will nevertheless analyze the defendants' actions under both the 14th Amendment and the 4th Amendment.

The standard enunciated in *Bell v. Wolfish* for application of the due process clause is whether the force used "amounts to punishment of the detainee." *Id.* at 535, 99 S.Ct. at 1872. The Court clearly stated that "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Id.* at 547, 99 S.Ct. at 1878. Accordingly, the determination of whether the force used amounted to punishment hinges on whether it was reasonably related to the legitimate objective of preventing escape, and not arbitrary or purposeless. *Id.* at 539, 99 S.Ct. at 1874.

■ Because this court has found no force was used against these detainees other than that used on March 23 in the prevention of the escape, this court finds that the use of force was reasonably related to the legitimate goal of preventing escape. The force used in the altercation among the plaintiffs and defendants was not arbitrary, and was no more than was necessary to accomplish the goal. Therefore, the court finds plaintiffs' 14th Amendment rights to due process were not violated.

The standard articulated in *Graham v. Connor* for application of the 4th Amendment is whether the force used was reasonable, balancing the intrusion on the detainee's rights against the government interest

at stake. *Graham,* 109 S.Ct. 1865 (1989). The Court directed that in weighing that balance, the reviewing court must consider whether the detainee poses a risk to the safety of others, including police officers; whether he is attempting to flee; and whether he is actively resisting. *Id.*

Here, the detainees had already rendered one jailer unconscious. They were attempting to escape, and when deterred, began hand-to-hand combat with the defendant officers. It is clear to this court that under those circumstances, with the governmental goal of preventing escape on one side of the balance, the intrusion on detainees' rights was outweighed. The force used by the defendants was not unreasonable. Therefore, the court finds the plaintiffs' 4th Amendment rights were not violated.

The plaintiffs have failed to prove by a preponderance of the evidence that either their 14th or 4th Amendment rights were violated, and so no liability can be imposed under 42 U.S.C. § 1983. Accordingly, it is ORDERED, ADJUDGED and DECREED that judgment be entered for defendants, Sheriff H.R. "Mike" Holzapfel, James Butler, Gary Schofield, and Randy Martin, and against plaintiffs Bobby Lynn Smith and Paul Wayne Smith. Costs are taxed against the plaintiffs.