George KERSH, Plaintiff–Appellee,

v.

Norman DEROZIER, et al., Defendants–Appellants.

No. 87–2589.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1988.

Jackie Cox, Clifton L. Holmes, Holmes Law Office, Longview, Tex., for Linebaugh.

Johnny R. McCollum, T. John Ward, Longview, Tex., for Derosier.

Rickey L. Faulkner, Charles H. Clark, Tyler, Tex., for City of Troup.

Curtis B. Stuckey, Timothy B. Garrigan, Nacogdoches, Tex., for plaintiff-appellee.

George Kersh, Palestine, Tex., pro se.

Before REAVLEY, GARWOOD and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

George Kersh obtained a money judgment on his § 1983 action against the City of Troup, Texas, its former police chief, Dale E. Linebaugh, and a former police officer, Norman Derozier. All defendants appeal. We affirm in part and reverse in part.

## I.

Between 5:00 and 6:00 on the afternoon of July 30, 1983, George Kersh, a Texas truck farmer, was unloading produce at one of his Troup fruit stands when Police Chief Linebaugh and Officer Derozier arrested him without a warrant for public intoxication, disorderly conduct, and violation of the city's open container law. About ten minutes before his arrest, Kersh got a piece of hay in his eye but had been unable to remove it before he was arrested. He was handcuffed after his arrest and was then unable to remove the hay himself. Kersh testified that he "begged" the arresting officer, Derozier, to let him wash his eye, but Derozier refused, telling Kersh that he'd lose his job if he stopped to let Kersh clean his eye. When Kersh attempted to complain to Linebaugh, the chief told Kersh to quiet down and cooperate with his arresting officer. Kersh further testified that he complained at booking and after his incarceration that he needed to wash the hay out of his eye, but he received no assistance. He attempted to remove the hay with a tissue while he was held at the jail but was unsuccessful, and by the time he was released—some four hours after his arrest—his eye was bleeding. Kersh's wife washed the hay out of his eye when he was released. Kersh sought medical treatment when his eye had not improved twelve hours later and was eventually hospitalized fifty-one days while his physician tried to save his eye. Kersh ultimately lost sight in that eye.

On the last day possible under the applicable statute of limitations, Kersh filed suit pro se against the City of Troup, Linebaugh, and Derozier claiming that they violated his civil rights when they arrested him without probable cause and when they demonstrated deliberate indifference to his serious medical needs. Kersh also asserted a state-law claim of intentional infliction of severe emotional distress. When he filed his complaint, Kersh received summons forms to prepare for service on the defendants, but no summons were issued until Kersh hired counsel some seven months after filing. All of the defendants

were eventually served, but Derozier and the City moved for dismissal for insufficient service of process. Their respective motions were denied, and a jury eventually returned a verdict against all defendants for $132,500.[1] All defendants appealed.

## II.

The appellants present a variety of arguments to this court. We will address each in turn.

## A. INSUFFICIENT SERVICE OF PROCESS

Derozier and Troup argue that the district court improperly denied their respective motions to dismiss for insufficient service of process. Their motions were based on Federal Rule of Civil Procedure 4(j),[2] which provides that a complainant must serve his defendant within 120 days of filing the suit to avoid dismissal. That dismissal may be ordered on the court's own initiative or upon motion of the parties. Rule 4(j)'s one exception forms the basis of Kersh's defense to the motions to dismiss: a complainant may be allowed to show "good cause" for failing to serve a defendant within the 120 days allowed. The district court denied these motions on grounds that Kersh's stated belief that the clerk's office would serve his defendants constituted "good cause" under Rule 4(j).

Though we will consider later the merits of appellants' contention, we must first address whether appellants waived this defense. Derozier's motion to dismiss for defects in service was his first responsive pleading. Troup, however, moved to dismiss only after it had filed an answer in which it did not assert defect in service as a defense. Under Rule 12(h)(1)(B), the defense of insufficient service of process is waived unless made in a party's first responsive pleading or an amendment to a first responsive pleading allowed as a matter of course.[3]

Troup argues that the mandatory language of Rule 4(j), which provides that the court *shall* dismiss an action in which service has not been made within 120 days, operates to exempt this service defect from the waiver provisions of Rule 12. To accept Troup's position requires us to conclude that this defect in service is not a waivable defense.

The cases do not support this view. For example, in *Gluklick v. United States*, 801 F.2d 834 (6th Cir.1986), the government realized after it had gained a default judgment against Gluklick that service was defective. Gluklick agreed to stipulate that he had been served if the government would agree to set aside the default judgment. After the judgment was set aside, Gluklick moved to dismiss on grounds that service had not been perfected within 120 days. The Sixth Circuit found that the

---

1. The verdict included $37,500 in actual damages for unlawful arrest, $80,500 for deliberate indifference to Kersh's serious medical needs, and $7,000 for the state claim of intentional infliction of severe emotional distress. The jury also imposed punitive damages against Derozier for $5,000 and against Linebaugh for $2,500.

2. Federal Rule of Civil Procedure 4(j) provides, in pertinent part:
   **Summons: Time Limit for Service.** If a service of the summons upon a defendant is not made within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's initiative with notice to such party or upon motion.

3. Federal Rule of Civil Procedure 12(b) provides that defenses must be raised in the pleading responsive to the one asserting the claim defended, with the exception of certain defenses that may be raised by motion. A pleading is "responsive" under Rule 12 only if it is the first opposing pleading filed after the claim for relief is made. *See T & R Enters. v. Continental Grain Co.,* 613 F.2d 1272, 1277 (5th Cir.1980). Federal Rule of Civil Procedure 12(h)(1), in pertinent part:
   A defense of ... insufficiency of process, or insufficiency of service of process is waived ... (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course. Troup does not argue on appeal that its amendment is one allowed as a matter of course under Rule 15(a), and its amended answer is not a responsive pleading under Rule 12.

mandatory language of Rule 4(j) did not affect the Rule 12(b) waiver provision. The court reasoned that Rule 4(j)'s requirements for notice to plaintiff before dismissal precluded a determination that service is automatically invalid on the 120th day after filing. Accordingly, even after the 120th day Gluklick's stipulation to accept service waived the protection of Rule 4(j). *See also Benny v. Pipes*, 799 F.2d 489 (9th Cir.1986).

Troup offers no persuasive argument why this failure to perfect service within 120 days should not be waivable, and Rule 12 does not suggest that a different waiver rule should apply for this particular service defect. The rule purports to have universal application, and we see no reason to deviate from its plain language. The district court correctly denied Troup's motion to dismiss.

■ Derozier, on the other hand, raised this defense in his first responsive pleading. In considering his argument that he was not properly served, we must address the merits of the district court's ruling that Kersh's lack of knowledge of service procedures constituted "good cause" for failing to perfect service within 120 days.

Kersh testified that he did not realize service was his responsibility, but thought that the clerk's office would "handle it." The district court determined that the delay in service was caused by "plaintiff's unfamiliarity with the mechanics of service, a serious but understandable mistake by a *pro se* litigant." Kersh argues on appeal that pro se litigants should be held to a lenient standard simply because they are pro se.

While this court has not specifically defined good cause in this context, *Winters v. Teledyne*, 776 F.2d 1304, 1306 (5th Cir. 1985) (quoting 4 *Wright & Miller Federal Practice & Procedure: Civil* § 1165) (emphasis by the court), sheds light on the concept:

> [G]ood cause . . . would appear to require *at least* as much as would be required to show excusable neglect, as to which sim-

ple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the parties seeking enlargement *and* some reasonable basis for noncompliance within the time specified" is normally required.

This court *has* defined excusable neglect. In *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981) (citations omitted), the pro se litigant failed to file notice of appeal within the thirty days allowed. We noted that the district court was "unaware of any excuse that Birl had to file late. However, the court reasoned that since Birl was proceeding pro se, the question of timely filing should be resolved in his favor." *Id.* at 593. We reversed, noting that "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law. The burden of establishing excusable neglect is upon the appellant, even one proceeding *pro se*. . . . Our circuit's rule is that the excusable neglect standard is a strict one . . . requiring more than mere ignorance." *Id.*

To hold that a pro se litigant's ignorance of Rule 4(j) excuses his compliance with the rule would automatically excuse his failure to serve his defendants timely. As the Ninth Circuit has written, "[t]o hold that complete ignorance of Rule 4(j) constitutes good cause for untimely service would allow the good cause exception to swallow the rule." *Townsel v. County of Contra Costa*, 820 F.2d 319, 320 (9th Cir.1987).

We conclude therefore that the district court erred in denying Derozier's motion to dismiss for insufficient service of process.[4]

### B. PRETRIAL STIPULATION

■ The final pretrial order contained the following stipulation:

> The acts and omissions of Defendants Chief Linebaugh and Officer Derozier, if any, at all times relevant hereto were in compliance with the actual customs, policies, practices and procedures of Defendant City of Troup.

---

**4.** Linebaugh did not raise this defense either in the district court or on appeal.

Troup takes issue with the district court's ruling that this stipulation "automatically triggered" Troup's liability if the individual defendants were found liable. Troup argues that the parties in the stipulation did not admit that the city's custom or policy is causally related to Kersh's alleged constitutional deprivations.

The plain meaning of the words in the stipulation do not support Troup's argument. Troup stipulated that the action of Linebaugh and Derozier were in compliance with city customs and policies. The jury's determination that Linebaugh and Derozier's conduct deprived Kersh of his constitutional rights leads us, as it did the district court, to the conclusion that the customs and policies of the city necessarily operated to deprive Kersh of his constitutional rights. Thus, the district court committed no error in ruling that the stipulation would automatically trigger the city's liability if the jury ruled against Linebaugh and/or Derozier. We likewise find no merit in Troup's alternative argument that it should be permitted to withdraw from the stipulation or that the pretrial stipulation should be disregarded. Kersh was entitled to try his case on the assumption that he need not prove the facts to which the parties stipulated. It is much too late to change these ground rules.

## C. SUFFICIENCY OF THE EVIDENCE

Police Chief Dale Linebaugh appeals only on the ground that the evidence was insufficient to support several aspects of the jury verdict.[5] Because Linebaugh did not move for directed verdict at the close of the evidence, Federal Rule of Civil Procedure 50(b) precludes both the district court and this court from entertaining a motion for judgment n.o.v. on a sufficiency of the evidence challenge. Our review of Linebaugh's sufficiency of the evidence claim is thus limited to whether any evidence supports the challenged findings. *Villanueva v. McInnis*, 723 F.2d 414 (5th Cir.1984); *Wright v. Wagner*, 641 F.2d 239 (5th Cir. 1981); *Hernandez v. Employers Mut. Liab. Ins. Co.*, 346 F.2d 154 (5th Cir.1965). Viewing the evidence in this light, we will consider each of Linebaugh's arguments in turn.

■ Linebaugh argues first that the evidence was insufficient to establish that he exhibited deliberate indifference to Kersh's serious medical needs. Linebaugh's argument focuses on his assertion that he knew nothing about Kersh's injury. Linebaugh testified that he approached Kersh at the time of the arrest closely enough to smell alcohol on his breath. The jury was entitled to find that Linebaugh saw the red, tearing condition of Kersh's eye. Linebaugh also acknowledged that Derozier visited him at home after leaving Kersh at the jail for booking and that they discussed whether Kersh had requested or received any medical attention. The jury could have inferred from this testimony that Linebaugh was already aware of Kersh's eye complaints when he in effect asked Derozier how he had responded to these complaints. This evidence is sufficient to support the verdict against Linebaugh that he knew of Kersh's injury, yet denied him medical treatment.[6]

■ Linebaugh also argues that the evidence does not support the jury's finding that his conduct was "extreme and outrageous," a necessary predicate to Kersh's recovery on his pendent state claim. Conduct is extreme and outrageous when it "exceed[s] all bounds usually tolerated by

---

**5.** The jury was given detailed interrogatories. In response to those interrogatories, the jury made a number of findings relevant to Linebaugh's appeal: (1) Linebaugh lacked probable cause to arrest Kersh for public intoxication or for disorderly conduct; (2) Linebaugh exhibited deliberate indifference to Kersh's serious medical needs; (3) Linebaugh failed to supervise or discipline Derozier properly, which proximately caused Kersh's injuries; and (4) Linebaugh's conduct in arresting Kersh was extreme and outrageous, causing Kersh extreme emotional distress.

**6.** Linebaugh also argues that the evidence will not support the jury's determination that his negligent failure to supervise Derozier was the proximate cause of Kersh's injury. Because this finding resulted in no additional award to Kersh, we have no reason to determine whether any evidence supports it.

**1514**

decent society, of a nature which is calculated to cause ... mental distress." W. Keeton, Prosser & Keeton on The Law of Torts § 12, at 60 (5th ed. 1984); *see also Vietnamese Fishermen's Assoc. v. Knights of the Ku Klux Klan,* 518 F.Supp. 993, 1013 (S.D.Tex.1981).

Kersh's warrantless arrest was for public intoxication and disorderly conduct. Two witnesses in addition to Kersh testified that Kersh was not intoxicated at the time of arrest. Kersh further testified that he wasn't drinking at the time of arrest and that the only alcohol he consumed that day were two beers at lunch. According to Kersh, the only cans in his truck at the time of the arrest were a variety of empty aluminum cans to be recycled and one unopened six pack of beer.

In addition, the jury received evidence from Derozier that Linebaugh was vindictive and that his vindictiveness extended to Kersh. Derozier wrote in a letter to the City Council in January of 1984 that "Chief Linebaugh was looking for anything to use against [Kersh]." Although Derozier could not pinpoint when Linebaugh first became agitated with Kersh, Kersh testified that he had complained that Linebaugh should be fired on the Monday or Tuesday preceeding his arrest. On this evidence, the jury was entitled to find that Linebaugh's actions in arresting Kersh were motivated by personal feelings of dislike and reasonably calculated to retaliate against Kersh for trying to get Linebaugh fired. There is "some" evidence to support this verdict.

### D. CAUSATION INSTRUCTION

■ Although counsel did not object at trial to the jury's instruction on proximate cause, Troup now complains that the instruction was misleading because it allowed the jury to base the city's liability on foreseeability when that is clearly contrary to *Monell v. Department of Social Servs.,* 436 U.S. 6585, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Although we assess Troup's claim under the plain error standard, *see Nowell v. Universal Elec. Co.,* 792 F.2d 1310, 1316 (5th Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986), we find no

error. The proximate cause instruction was directed at the individual defendants, not the city, and was proper. The jury was further instructed that a city could be held liable for the actions of its officers and employees only if those actions reflected official policy or custom.

### III.

For the reasons discussed above, the district court's judgment against Norman Derozier is vacated and the case remanded with instructions to dismiss the action against Derozier without prejudice. The district court's judgment is in all other aspects affirmed.

REVERSED in part, AFFIRMED in part, and REMANDED.