United States Court of Appeals,

Fifth Circuit.

No. 93-2172.

RESOLUTION TRUST CORPORATION, As Receiver for Commonwealth Federal Savings Association, Plaintiff-Appellee,

v.

Jerry L. STARKEY, et al., Defendants,

George D. Thomas, Jr., and George D. Thomas, III, Defendants-Appellants.

Jan. 9, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, GOLDBERG and DUHÉ, Circuit Judges.

GOLDBERG, Circuit Judge:

The Resolution Trust Corporation ("RTC") brought suit against defendants George D. Thomas, Jr. (Thomas Jr.), George Thomas III (Thomas III), and Jerry L. Starkey, to enforce guaranties on two promissory notes. The defendants did not oppose the RTC's motion for summary judgment, and the district court granted summary judgment in favor of the RTC. Defendants Thomas Jr. and Thomas III[1] (hereinafter referred to collectively as "appellants") appeal from the district court's judgment. The appellants assert that the RTC did not properly serve process on them. In addition, the appellants argue that the RTC failed to demonstrate its ownership of the promissory notes. We reverse with respect to Thomas III and affirm with respect to Thomas Jr.

---

[1]Starkey is not a party to this appeal.

The RTC brought this suit in its capacity as Conservator of Commonwealth Federal Savings Association ("Commonwealth Federal"), a federally chartered savings and loan association with its principal place of business in Houston, Texas. The RTC filed this suit to collect the deficiency balance remaining on two promissory notes the defendants had guarantied.

Some background on the origin and ownership of the notes at issue in this case is required. The defendants borrowed $1,191,168 from Commonwealth Savings Association ("Commonwealth Savings"). To obtain these funds the defendants signed two promissory notes. These notes were secured by real estate owned by the defendants. In addition, the defendants made personal guaranties on these notes.

In the summer of 1988 both notes matured. When the notes went unsatisfied, Commonwealth Savings foreclosed on the properties securing the notes, and sold the properties at auction. The sale of these properties yielded $536,618, leaving a deficiency of $654,550.

On March 8, 1989, pursuant to a resolution by the Federal Home Loan Bank Board ("FHLBB"), Commonwealth Savings was placed into the conservatorship of the Federal Savings and Loan Insurance Corporation ("FSLIC"). On May 23, 1989, the FHLBB created Commonwealth Federal and named the FSLIC conservator for Commonwealth Federal. On that same day, all of the notes and guaranties at issue in this case were assigned to the FSLIC as

Conservator for Commonwealth Federal.

On August 9, 1989, the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") became law. FIRREA created the RTC and provided that the RTC would succeed to the interests of all FSLIC receiverships or conservatorships created from January 1, 1989 through August 9, 1989. The Commonwealth Federal conservatorship fell into this category, and the RTC became conservator of Commonwealth Federal.

Upon becoming conservator of Commonwealth Federal, the RTC sent the defendants letters demanding payment. These letters went unheeded, and on October 3, 1990 the RTC filed suit to recover the deficiency owing on the notes. However, the RTC failed to serve any of the defendants within 120 days of filing its complaint.

On February 4, 1991, the RTC filed a motion to retain the case on the docket. This motion requested that the district court not dismiss the RTC's complaint pursuant to Federal Rule of Civil Procedure 4(j) for failure to serve the parties within the relevant time period. On February 8, 1991, the district court granted the RTC's motion and issued a retention order permitting the RTC "... 30 days from [that] Order to serve one or more of the defendants."

The RTC effected service upon Starkey on March 9, 1991. Thomas Jr. was not served until March 19, 1991, and Thomas III was not served until April 9, 1991. Thomas III raised the defense of insufficient service of process in his answer, but Thomas Jr. did not. By order dated July 3, 1991, the district court denied Thomas III's motion to dismiss. On September 1, 1992, the RTC filed a

3

motion for summary judgment. Thomas III filed no response to the summary judgment motion. Thomas Jr. did not respond to the RTC's summary judgment motion either, but instead moved for leave to file a motion to dismiss. The district court dismissed the appellants' motions, and granted summary judgment in favor of the RTC on January 8, 1993.

## II

Thomas Jr. appeals from the district court's denial of his motion for leave to file a motion to dismiss. Thomas III appeals the district court's denial of his motion to dismiss. Each appellant's issue is addressed in turn.

*A. Propriety of Service of Process upon Thomas Jr.*

Thomas Jr. failed to raise the insufficiency of process in his answer. Accordingly, he has waived any objection to service. Fed.R.Civ.P. 12(h)(1)(B). Thomas Jr. argues that the mandatory language of Rule 4(j) (*i.e.,* "an action *shall* be dismissed" if service is not made within a specified time period) exempts defects in service from the waiver provisions of Rule 12. The law is clear, however, that objections to service are waived if not raised in the answer or pre-answer motion. *Kersh v. Derozier,* 851 F.2d 1509, 1511-12 (5th Cir.1988). Accordingly, the district court properly denied Thomas Jr.'s motion for leave to file a motion to dismiss.

*B. Propriety of Service of Process upon Thomas III*

Thomas III's argument deserves greater reflection since he did raise his objection to service in a timely manner. Thomas III

4

filed a motion to dismiss based on, *inter alia,* the deficiency of service. The district court denied Thomas III's motion to dismiss without comment. We hold that in doing so, the district court erred.

Thomas III argues that the district court erred in granting the RTC extensions, both after the original 120 days expired and after the expiration of the 30-day extension. Conversely, the RTC argues that the district court has discretion to freely grant extensions upon a showing of good cause. The question before us is whether good cause existed for the RTC's delayed service of process as to Thomas III. The district court's finding of good cause is reviewed under an abuse of discretion standard. *McDonald v. United States,* 898 F.2d 466, 468 (5th Cir.1990).

The RTC's motion to retain the case on the docket consisted of a few lines of text alleging that it was diligently attempting to serve the defendants, that numerous attempts at service had been unsuccessful, and that more time was needed. We need not decide whether the district court abused its discretion in granting the RTC's motion to retain the case on the docket. This is so because the RTC was wholly unjustified in not serving Thomas III within the 30-day extension granted by the district court. Assuming, arguendo, that the RTC showed good cause for failing to serve Thomas III within the 120 following the filing of their suit, the record is bereft of any evidence of good cause for the RTC's failure to serve process within the 30 day extension granted by the district court.

In its response to Thomas III's motion to dismiss, the RTC claims to have made diligent efforts at serving Thomas III, but was unable to do so because it had an incorrect address for Thomas III, and because Thomas III's common name prevented him from being located. It must be assumed that these allegations refer to the difficulties the RTC encountered in finding Thomas III during the 120 days following the filing of the complaint, since they are the same reasons the RTC provided in its motion to retain the case on the docket. Next, the RTC alleged that it was unable to serve Thomas III within the 30-day extension granted by the district court because a postal forwarding order for Thomas III had expired. Apart from this frustrated attempt to mail service to Thomas III, the RTC does not enumerate any other attempt to serve or find Thomas III. After the 30-day extension had expired, the RTC discovered, through some unknown source, that Thomas III was an attorney, and obtained his address from the State Bar. Thereafter, the RTC was able to effect service upon Thomas III at that address.

We conclude that the RTC failed to demonstrate good cause existed for its failure to serve Thomas III within the 30 day extension granted by the district court. The RTC made no showing to support its claim that good cause existed for failing to serve Thomas III. The RTC claims that at all times, it diligently sought to serve Thomas III, yet the RTC did not discover that the address it had for Thomas III was invalid until after 120 days had lapsed. Also, there is evidence that Thomas III could have been located if reasonable efforts had been expended. Thomas III was a practicing

6

attorney in the Dallas area, and his telephone number and address were listed in the Southwestern Bell Telephone Directory. The RTC failed to explain why it took over five months to discover that Thomas III was an attorney, or why it did not avail itself of the reasonable alternative means of serving process.

The RTC contends that despite the paucity of evidence of good cause, their service on Thomas III is still valid since there was no "sinister motive" on its part in the delay. This argument is based on a strained reading of *Carimi v. Royal Caribbean Cruise Line,* 959 F.2d 1344 (5th Cir.1992). In *Carimi,* this court found good cause to exist for late service where the plaintiff "at all times acted in good faith, and without sinister motivation." *Id.* at 1349. From this language the RTC urges us to sanction its service on Thomas III since there is no evidence that the delay was occasioned by any maleficent intentions. However, the requirement of *Carimi* is good faith *and* no sinister motive. It is not enough that the RTC meant no harm in failing to serve Thomas III within the time prescribed—the fact that it was careless is sufficient to militate against the showing of good faith required for shelter under *Carimi.* In short, one is required to be diligent in serving process, as well as pure of heart, before good cause will be found.

### III

Neither of the appellants opposed the RTC's motion for summary judgment. This alone is an insufficient basis for a grant of summary judgment, since the RTC still must establish the absence of a genuine issue of material fact before it can prevail on a

7

summary judgment motion.  *Hibernia Nat'l. Bank v. Administracion Central Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985); *John v. Louisiana (Bd. of Trustees),* 757 F.2d 698, 709 (5th Cir.1985).

Ordinarily, suits on promissory notes provide "fit grist for the summary judgment mill."  *FDIC v. Cardinal Oil Well Servicing Co.,* 837 F.2d 1369, 1371 (5th Cir.1988).  In order to prevail in its summary judgment motion, the RTC "need not prove all essential elements of a breach of contract, but only must establish the note in question, that [the non-movant] signed the note, that the [RTC] was the legal owner and holder thereof, and that a certain balance was due and owing on the note."  *Clark v. Dedina,* 658 S.W.2d 293, 295 (Tex.App. 1 Dist.1983).

A photocopy of a note, attached to a sworn affidavit declaring that the photocopy is a true and correct copy of the original, is considered valid summary judgment evidence in Texas. *Life Insurance Co. v. Gar-dal, Inc.,* 570 S.W.2d 378, 380 (Tex.1978).  If the execution of the promissory note has not been denied under oath, a prima facie case is made by an affidavit attesting that the movant is the owner and holder of the note, and that there is a balance due on that note.  *Clark,* at 296.

In its motion for summary judgment, the RTC submitted the verified affidavit of Don Barber, the RTC site manager responsible for managing the business records of Commonwealth Federal.  In Barber's affidavit, he describes the date of execution, maker, payee, principal amount, balance due, amount of accrued interest owed, and the date of default for each of the two promissory notes.

8

Photocopies of the promissory notes were attached to his affidavit.

Since nothing in the record negated the existence of these notes, and the defendants did not deny that they executed the notes, the district court found that no genuine issue of material fact remained as to the existence and validity of the promissory notes. Furthermore, the district court found that the summary judgment evidence presented by the RTC presented a prima facie case of default on the notes, and that none of the affirmative defenses the defendants plead were valid.

We hold that the district court applied the correct legal standard in ruling on the summary judgment motion and that the RTC met its burden in demonstrating an absence of a genuine issue of material fact.

On appeal, the appellants argue that the district court made two errors in granting summary judgment. First, the appellants argue that the RTC failed to demonstrate the transfer of ownership of the notes from Commonwealth Savings to Commonwealth Federal. The notes are payable by their terms to the order of Commonwealth Savings. In order to establish its ownership of the notes the RTC had to demonstrate the transfer of ownership from Commonwealth Savings to Commonwealth Federal. This transfer may be proven by an indorsement of the notes in favor of Commonwealth Federal. In the absence of an indorsement, there is no presumption that the transferee of a note is its owner, and possession must then be demonstrated by proving the transaction whereby the note was acquired. *Jernigan v. Bank One, Texas, N.A.*, 803 S.W.2d 774, 776-

77 (Tex.App. 14 Dist.1991).

In the affidavit accompanying the RTC's summary judgment motion, the photocopy of the promissory notes appended thereto do not have the indorsement from Commonwealth Savings to Commonwealth Federal.  In its complaint, though, the RTC submitted photocopies of the promissory notes being sued on, and these facsimiles did contain the indorsement of Commonwealth Savings in favor of Commonwealth Federal.  The appellants argue that since the photocopies appended to the summary judgment motion did not have the indorsements, the RTC has not proven ownership of the promissory notes, and therefore summary judgment was improperly granted.  However, this argument takes an unduly restrictive view of what may serve as valid summary judgment evidence.

In ruling on the RTC's motion for summary judgment the district court considered the entire case file to determine whether a genuine issue of material fact existed.  *Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1980).  A verified complaint can be considered as summary judgment evidence.  *King v. Dogan,* 31 F.3d 344, 346 (5th Cir.1994).  As such, the indorsed promissory notes accompanying the RTC's complaint is valid summary judgment evidence, and establishes Commonwealth Federal's ownership of the notes.

Finally, the appellants argue that the affidavit of Don Barber is invalid because the signature page is not the original. The appellants cite no cases in making this argument.  The admissibility of summary judgment evidence is subject to the same

rules of admissibility applicable to a trial. *Munoz v. International Alliance of Theatrical Stage Employees etc.,* 563 F.2d 205, 297 n. 1 (5th Cir.1977). Federal Rule of Evidence 1003 provides that a duplicate is admissible to the same extent as an original unless there is a genuine question of authenticity or if it would be unfair under the circumstances. Since the appellants have not contested the authenticity of the Barber affidavit, and have not alleged any prejudice owing to the use of a facsimile signature, the Barber affidavit is admissible to prove the elements of the RTC's ownership of the notes.

In sum, we hold that the district court is REVERSED in respect to its denial of Thomas III's motion to dismiss, and is AFFIRMED in all other respects.