799 So.2d 133 (2001)
Donald MOORE, Sole Heir of Katie MOORE, Appellant,
v.
Todd BOYD, Appellee.
No. 2000-CA-00569-COA.
Court of Appeals of Mississippi.
October 16, 2001.
*134 Charles E. Miller, McComb, Angela Taylor Miller, Attorneys for Appellant.
S.T. Rayburn, Oxford, Paige Bruce Rayburn, Attorneys for Appellees.
BEFORE KING, P.J., BRIDGES, AND IRVING, JJ.
BRIDGES, J., for the Court:
¶ 1. This appeal comes to us from the dismissal in the trial court of this wrongful death case against Todd Boyd for Donald Moore's failure to serve Boyd timely and properly. On July 11, 1996, Donald Moore filed a complaint for the wrongful death of his mother, Katie Moore, to whom he is sole heir. Joe Bennett, Betty Bennett, Steven Hinton and Chris Wyatt were each served a summons and complaint within the designated 120 days required by the Mississippi Rules of Civil Procedure. M.R.C.P. 4(h). However, Boyd, also named as a defendant in this case, did not receive service of process until September 11, 1998, over two years after the complaint was filed. Boyd moved the Lafayette County Circuit Court for his dismissal from this case for lack of proper service. Boyd's motion for dismissal was granted. All other named defendants have since been dismissed from this lawsuit for other reasons. Donald Moore filed a timely appeal in which he claims error on the part of the lower court for dismissing his case against Boyd.

FACTS
¶ 2. Katie Moore was killed in a house fire in Oxford, Mississippi, in a home which Boyd was renting and living in with Hinton and Wyatt. The house was owned by the Bennetts. Katie Moore knew Boyd because she had worked for his parents in McComb, Mississippi, as a housekeeper for many years. Katie Moore was in Oxford to attend Boyd's graduation from the University *135 of Mississippi when the tragic events of this case occurred.
¶ 3. While Katie Moore was asleep in the back bedroom of Boyd's rental house, a fire started. It was later determined that the fire originated from an old space heater. All other occupants were able to vacate the house with minor injuries; however, Katie Moore sustained fatal injuries and died shortly after the fire. Donald Moore filed this lawsuit claiming negligence on the part of Boyd, Hinton and Wyatt, asserting that they left materials in front of the space heater and that they disabled the smoke detector provided for them, thereby causing it to take longer for the fire to be discovered. Donald Moore also named the Bennetts in the lawsuit, alleging that they were negligent in their ownership and upkeep of the building. Additionally, Donald Moore claims that Boyd was personally negligent for electing to designate the back bedroom for Katie Moore, who had trouble walking without assistance because of recent hip surgery, instead of giving her a room closer to exits in the event of an emergency.
¶ 4. Donald Moore filed his complaint in this matter on July 11, 1996, giving him 120 days from that date, as provided by law, or until November 7, 1996, to serve a summons and complaint on each of the named defendants. Hinton, Wyatt and the Bennetts were all served on October 10, 1996. Boyd, however, could not be located for purposes of service of process at that time. Summonses for Boyd were re-issued first on December 13, 1996, then again on February 5, 1997, but were never served on Boyd. It was not until September 11, 1998, when Boyd was present for a deposition in a separate but related case, that Donald Moore and his attorney finally successfully served Boyd.
¶ 5. Donald Moore claims that he, with the help of his attorney, tried to track down Boyd on several occasions in both Oxford, Mississippi, where it was supposed he would be taking graduate courses, and in the Atlanta, Georgia area, where it was later discovered that Boyd had moved. It is Donald Moore's assertion that numerous attempts to find Boyd were made before the November 7, 1996 deadline. However, Boyd contends that Donald Moore and his attorney made only one attempt before that date. The argument by Donald Moore is that Boyd intentionally evaded service of process in order to avoid becoming a part of this lawsuit. However, Boyd argues that he never lived in secrecy and that the information on his whereabouts during all of that time was given to Donald Moore and his attorney on several occasions. Boyd claims that Donald Moore did not make adequate efforts to follow up on that information and that it is therefore not Boyd's fault that service of process on him took over two years. Boyd moved for a dismissal on these grounds in the trial court and the dismissal was granted.
¶ 6. There is no evidence that Donald Moore ever asked the court for an extension on the 120 day period in which he had to serve Boyd. Despite that fact, Donald Moore asks this Court to review the circumstances of this matter and rule that the dismissal of his case against Boyd should be overturned in the interest of justice for his mother. Donald Moore claims that service on Boyd took so long because Boyd was successfully dodging the process servers and that this should serve as good cause for the delay under the Mississippi Rules of Civil Procedure without any regard to the fact that no extension was requested.

LEGAL ANALYSIS
¶ 7. Rule 4(h) of the Mississippi Rules of Civil Procedure reads as follows:

*136 If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such part or upon motion.
M.R.C.P. 4(h). See also Fed.R.Civ.P. 4(m). See Crumpton v. Hegwood, 740 So.2d 292, 293-94 (Miss.1999); Watters v. Stripling, 675 So.2d 1242, 1243 (Miss. 1996); Fortenberry v. Memorial Hospital, 676 So.2d 252, 255-56 (Miss.1996); Peters v. United States, 9 F.3d 344, 345 (5th Cir.1993); Black v. Carey Canada, Inc., 791 F.Supp. 1120, 1126 (S.D.Miss.1990). "Good cause" for delay has been interpreted as "excusable neglect" or adequate proof that there was a need for the delay or other justification of the delay which would convince the courts to grant an extension in the service of the defendant(s). Black, 791 F.Supp. at 1126-27. This excusable neglect standard is a very strict standard. Id. at 1127. See also Kersh v. Derozier, 851 F.2d 1509, 1512 (5th Cir. 1988). "[A] conscious and intentional delay" of service by the plaintiff will not constitute good cause for an extension. Black, 791 F.Supp. at 1127.
¶ 8. In the instant case, summonses for all defendants were not even issued until September 30, 1996, eighty-two days after the complaint was filed. Service to all defendants, other than Boyd, was completed on October 1, 1996.
¶ 9. Boyd argues that Moore should have gone to the court seeking an extension of time during the 120-day period in order to be allowed to serve him almost two years after the complaint was filed. On the other hand, Moore argues that a request for extension by the court is not required under the Mississippi Rules of Civil Procedure. We must agree that nothing in the rules or statutes suggest that an extension granted by the court is required. However, we look to the case of Fortenberry, where the Mississippi Supreme Court addressed a plaintiff's failure to seek such an extension from the lower court. Fortenberry, 676 So.2d at 256. The plaintiff in that case instead wrote a letter to the court advising that he would continue to search for the defendant, in essence, "granting himself a motion to extend that he could invoke at any time." Id. In response to this, the court ruled: "[w]e find the better method to be utilized in future cases would be for plaintiff's counsel to seek authority for extensions from the court, rather than unilaterally making this decision himself." Id.
¶ 10. We necessarily follow that ruling and find that Moore should have sought this extension through the court system, thereby securing his right to continue attempts at service on Boyd past the 120 day period, rather than single-handedly continuing his search for Boyd without aid from the court after November 7, 1996. It would seem reasonable to this Court that if plaintiffs are allowed to determine, on their own, to continue the quest for a lost defendant without this safeguard ensuring the court's understanding, there would be no clear reason for having the 120 day rule. But, because it exists, we are convinced that a request for an extension of this period through the proper channels of the court system is necessary.
¶ 11. Moore further argues that he attempted service on Boyd many times, but he was not to be found. He asserts that because Boyd was so difficult to locate, it became obvious that Boyd was consciously evading process until the time period had elapsed. As is stated above, in *137 order to properly serve a defendant after the 120-day deadline has passed, and absent an extension from the court, the plaintiff must show good cause for the delay. M.R.C.P. 4(h); Fed.R.Civ.P. 4(m); Crumpton, 740 So.2d at 293-94; Fortenberry, 676 So.2d at 256; Peters, 9 F.3d at 345.
[G]ood cause would appear to require at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules normally does not suffice, and some showing of good faith on the party seeking an enlargement and some reasonable basis for noncompliance within the time specified is normally required.
Black, 791 F.Supp. at 1127. See Winters v. Teledyne Movible Offshore, Inc., 776 F.2d 1304, 1306 (5th Cir.1985). See also Kersh, 851 F.2d at 1512.
¶ 12. Moore's argument is that his failure to serve Boyd on time was "excusable" under the standard because of Boyd's calculated aversions to the attempts at service. There is no evidence to support this conclusion. Nothing is presented by Moore that would tend to show that Boyd was hiding his whereabouts from Moore or anyone else. In fact, the record shows that Moore learned of Boyd's relocation to Georgia on at least two occasions, once from Boyd's own father, and that it took Moore and his attorney at least five months or more to even attempt service on Boyd at his Georgia address. In any event, only one attempt at service of process before the November 7, 1996 deadline is actually documented. It appears that, after the first summons intended for Boyd was returned unexecuted in October 1996, a second summons was not even re-issued and service was not again attempted until December 1996.
¶ 13. We find that Moore's arguments of excusable delay are misplaced in that he claims many efforts were made to serve Boyd, but, he asserts, through no fault of his own, he could not get the job done until September 1998. While Moore and his attorney may have made several efforts to serve Boyd over those two years, only one of those efforts is confirmed to have been made during the prescribed period under the Mississippi Rules. M.R.C.P. 4(h); Fed.R.Civ.P. 4(m). There is no indication or documentation provided to show that any other attempts, other than the one, were made before November 7, 1996. Therefore, it is our opinion that Moore's cause of action against Boyd was fatal from that point forward unless Moore could prove good cause for the two-year delay. As previously noted, we find no evidence of such. While an extension of time through the courts is not required, it is, as we have noted above, preferred. Moore made no effort to obtain such an extension in order to steadfastly preserve his future efforts at service on Boyd.
¶ 14. Because we find that Moore's argument claiming evasion of service by Boyd has no merit, and because he argued no other reasons for the delay in service other than Boyd's intentional avoidance, we cannot find that Moore has shown good cause to have the dismissal of his case against Boyd overturned. "This rule mandates dismissal upon a finding that service has not been made within the specified time period and that good cause to extend the time does not exist." Black, 791 F.Supp. at 1127. "[A]lthough the operation of the rule may be harsh, this is the scheme that Congress has devised, and a party's failure to comply with the express requirements of the applicable rules can result in substantial prejudice." Peters, 9 F.3d at 346. Therefore, even when a plaintiff will be caused to lose a right of *138 action because of the running of the statute of limitations on that action, the 120-day rule must be observed by the courts. See Watters, 675 So.2d at 1244.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., AND KING, P.J., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, J.
SOUTHWICK, P.J., CONCURRING:
¶ 16. Among our obligations as appellate judges is to make as precisely correct statements of the law as we can in the areas that are relevant for our review. There are many instances in which part of the structure of my opinions has unintentionally been made of fragile stuff, so I cast no stones. The outcome in this case appears correct, but the majority has made a statement about legal principles that in my view requires clarification.
¶ 17. The majority states that failure to serve process within 120 days from the filing of the complaint meant that the "cause of action against Boyd was fatal from that point forward" unless good cause was shown. Majority opinion at (¶ 13). "Fatal" is incorrect, it seems to me. The result of failing to serve is to dismiss without prejudice as to the unserved defendant. M.R.C.P. 4(h). It might be fatal to the cause of action if the statute of limitations has run. The death was on July 11, 1996; the statute of limitations on wrongful death caused by negligence is three years. Miss.Code Ann. § 15-1-49 (Rev. 1995). The service was finally made on September 11, 1998. Therefore, even though that service was invalid, the plaintiff would have had until July 1999 to file and serve a new complaint against these parties.
¶ 18. I also note that even when a complaint is dismissed after the statute of limitations has expired, a statute provides a one year grace period to refile if the reason for the dismissal was "for any matter of form...." Miss.Code Ann. § 15-1-69 (Rev.1995). Several precedents state that a dismissal for lack of jurisdiction is "a matter of form." Ryan v. Wardlaw, 382 So.2d 1078, 1079 (Miss.1980). In discussing that principle, the Wardlaw court explained the concept of "form":
Where the plaintiff has been defeated by some matter not affecting the merits, some defect or informality, which he can remedy or avoid by a new process, the statute shall not prevent him from doing so, provided he follows it promptly, by suit within a year.
Id. at 1080, quoting Hawkins v. U & N Ins. Co., 110 Miss. 23, 69 So. 710 (1915), which in turn was quoting Coffin v. Cottle, 33 Mass. 383 (16 Pick. 383) (1835).
¶ 19. Here, the service of process occurred after the time for service lapsed. It was proper to dismiss without prejudice, which is what the trial court did. We are now affirming. In our analysis we should not blend what requires dismissing the suit and what is fatal to the cause of action.
¶ 20. I concur that it is proper to affirm the dismissal of the claims against some of the defendants because of the failure timely to serve those parties.
LEE, J., JOINS THIS SEPARATE OPINION.