# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01436-SCT

*JIMMY PERRY AND TWYLIA PERRY, AS PARENTS*
*OF BRANDI IVY PERRY, A MINOR*

*v.*

*ORLANDO J. ANDY, M.D. AND HATTIESBURG*
*CLINIC, P. A.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/2002 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | THOMAS MICHAEL REED |
| ATTORNEYS FOR APPELLEES: | AMANDA CLEARMAN WADDELL |
| | J. ROBERT RAMSAY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 10/30/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Aggrieved by the circuit court's judgment dismissing their lawsuit pursuant to Miss. R. Civ. P. 4(h) and 12(b)(5) & (6), Jimmy and Twylia Perry have appealed to this Court on the issue of whether they had good cause, as pro se plaintiffs, for not properly serving Orlando J. Andy, M.D., and the Hattiesburg Clinic, P.A., within the 120 days prescribed by Miss. R. Civ. P. 4(h). Finding that the circuit court was correct in granting the motion to dismiss filed by Dr. Andy and the Hattiesburg Clinic, we affirm the judgment of the Circuit Court of Forrest County.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On February 13, 2000, Brandi Ivy Perry, a nineteen-year-old girl suffering from severe abdominal pain, underwent an emergency appendectomy performed by Dr. Orlando J. Andy of the Hattiesburg Clinic, P.A., at Forrest General Hospital in Hattiesburg, Forrest County, Mississippi. Following a two-day recovery period, Brandi was released, and she and her family drove to Atlanta, Georgia. Three days later, while in Atlanta, Brandi's acute abdominal pain returned. Sometime after midnight on February 19, 2000, she was rushed by ambulance to Emory University Hospital for emergency surgery.

¶3.     During her surgery at Emory, Dr. John Hunter discovered that evidently as a result of her earlier appendectomy, Brandi had sustained a near fatal "nicked abdomen wall and ovary." Brandi's parents, Jimmy and Twylia Perry, incurred expenses in excess of $24,500 for the second surgery. Additionally, the second surgery left a 10-inch scar across Brandi's lower abdomen. Brandi missed five weeks of college course work, forcing her to withdraw from the University of Southern Mississippi for the remainder of the semester.

¶4.     On February 12, 2002, Jimmy and Twylia filed this pro se lawsuit against Dr. Andy and the Hattiesburg Clinic in the Circuit Court of Forrest County, alleging medical negligence arising from the emergency appendectomy performed by Dr. Andy on February 13, 2000. On February 19 or 20, 2002, Mr. Perry hand delivered a copy of the complaint to Dr. Andy at his place of business.

¶5.     Process was finally issued on June 17, 2002, and Dr. Andy and the Hattiesburg Clinic were personally served with process on June 19, 2002, seven days after the 120-day deadline for service of process had expired.

¶6.     Dr. Andy and the Hattiesburg Clinic filed a motion to dismiss pursuant to Miss. R. Civ. P. 4(h) and 12(b)(5) & (6), alleging failure to effect service of process within 120 days. The trial court heard the motion to dismiss. Mr. Perry explained during the circuit court hearing:

MR. PERRY: Your Honor, I would like to enter this letter. Like you say, ignorance is no excuse for the law. I personally handed Dr. Andy what I thought was a suit February 19 or 20, which I filed February 12, 2002. This is the earliest I could get an appointment with Dr. Andy.

\*\*\*\*\*\*

BY THE COURT: Did you even consider having process served?

MR. PERRY: I didn't know anything about that, Your Honor.

¶7. The trial court was sympathetic to the Perrys' self-representation, but, nevertheless, found, "The rules are the rules are the rules and we all have to abide by that." Accordingly, the trial court entered an order of dismissal, and the Perrys appeal.

## DISCUSSION

¶8. The Perrys argue that they had good cause for not properly serving process on the defendants within the 120 days prescribed by Miss. R. Civ. P. 4(h). Given their pro se status in the circuit court and the fact that Mr. Perry handed a copy of the complaint to Dr. Andy prior to the expiration of the 120 days, the Perrys contend the trial court erred in dismissing their lawsuit against Dr. Andy and the Hattiesburg Clinic.

¶9. The Perrys correctly state that the standard of review for a trial court's finding of fact on the existence of good cause for delay in service of process is abuse of discretion. *Holmes v. Coast Transit Auth.*, 815 So. 2d 1183, 1185 (¶ 6) (Miss. 2002) (citing *Rains v. Gardner*, 731 So. 2d 1192, 1197-98 (Miss. 1999)). A trial court's determination of fact as to whether good cause exists for delay in service of process is a discretionary ruling entitled to deferential review on appeal. *Id.*

¶10. Mississippi Rule of Civil Procedure 4(h) states:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required

cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

¶11. The Perrys argue that Mr. Perry fulfilled the essence of Miss. R. Civ. P. 4(h) by serving a copy of the complaint to Dr. Andy on February 19 or 20, 2002, even though no summons accompanied the complaint. The Perrys argue, and we agree, that Dr. Andy received actual notice of the lawsuit when Mr. Perry handed him a copy of the complaint. There is an obvious distinction between a total want of service of process and a defective service of process. *Harrington v. Wofford*, 46 Miss. 31, 41 (1871). When process is completely lacking, "the defendant has no notice at all of the suit." *Id.* However, "defective service of process gives the defendant actual notice of the suit or proceeding against him." *Id.*; *see also Pinkston ex rel. Pinkston v. Miss. Dep't of Transp.*, 757 So. 2d 1071, 1073 (¶ 7) (Miss. Ct. App. 2000) (finding attorney had actual notice of a court order when she received a letter from the county clerk indicating the order had been entered). Thus, when Mr. Perry handed Dr. Andy a copy of the complaint actual notice was established.

¶12. The Perrys further contend they acted in good faith and should not be effectively barred from their day in court when they acted diligently to effect process while proceeding pro se. In *Holmes* this Court stated:

> [G]ood cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, *the plaintiff has acted diligently in trying to effect service* or there are understandable mitigating circumstances, *or the plaintiff is proceeding pro se* or in forma pauperis.

815 So. 2d at 1186 (¶ 12) (quoting 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1137, at 342 (3d ed. 2000)) (emphasis added). The Perrys argue this language in *Holmes*

provides jurisprudential room for this Court to afford pro se plaintiffs greater latitude in complying with service of process requirements.

¶13.    In response, Dr. Andy and the Hattiesburg Clinic cite *LeBlanc v. Allstate Ins. Co.*, 809 So. 2d 674 (Miss. 2002) and *Moore ex rel. Moore v. Boyd*, 799 So. 2d 133 (Miss. Ct. App. 2001), to assert that good cause or diligence must be shown by satisfying a standard of excusable neglect, which is ordinarily not satisfied by ignorance of the rules. Dr. Andy and the Hattiesburg Clinic point out that pro se litigants must be held to substantially the same standards of litigation conduct as members of the bar. *Ivy v. Merchant*, 666 So. 2d 445, 449-50 (Miss. 1995); *see also Stringer v. Am. Bankers Ins. Co. of Fla.*, 822 So. 2d 1011, 1014 (¶ 10) (Miss. Ct. App. 2002). Once pro se litigants are held to the same standard as practicing attorneys, Dr. Andy and the Hattiesburg Clinic argue the law is clear: ignorance of the law is no excuse for failure to serve process within 120 days of filing a complaint, and such failure is grounds for dismissal.

¶14.    The question before this Court is whether Miss. R. Civ. P. 4(h) demands strict compliance by pro se plaintiffs or whether substantial compliance satisfies the "good cause" requirement for delay of service. Narrowly construed, this is a question of first impression for this Court. Following the language of *LeBlanc*, *Moore*, and *Stringer*, this Court finds that pro se plaintiffs must strictly comply with Miss. R. Civ. P. 4(h).

¶15.    In *LeBlanc*, this Court affirmed the trial court's finding that the plaintiff failed to show good cause for failure to serve process within 120 days despite the fact that the plaintiff's injuries from the disputed automobile accident affected her cognitive ability and limited communication with her attorney. 809 So. 2d at 678. LeBlanc was a passenger in a vehicle involved in an automobile accident. *Id.* at 675. In addition

to suing the drivers involved, LeBlanc sued her insurance company to recoup uninsured motorist coverage. *Id.* Upon its motion, the insurance company was dismissed because LeBlanc failed to effect service of process within 120 days. *Id.* In upholding the trial court's Rule 4(h) dismissal, this Court held, "the failure to even have process issued showed a lack of diligence beyond excusable neglect." *Id.* at 678.

¶16.     Similarly, in *Moore* the Court of Appeals stated, "[the] excusable neglect standard is a very strict standard." 799 So. 2d at 136 (¶ 7).  After his mother was killed in a house fire in Oxford, Mississippi, Moore filed a wrongful death action against five defendants, including Boyd.  *Id.* at 134 (¶ 1). Summonses were served on all defendants except Boyd, who had moved to Atlanta, Georgia. *Id.* Not until two years and two months after filing the complaint did Moore successfully serve Boyd. *Id.* at 135. Boyd's Rule 4(h) motion for dismissal was granted. On appeal, Moore argued Boyd intentionally evaded process. *Id.* Finding no evidence Boyd affirmatively evaded process, the Court of Appeals affirmed the dismissal. *Id.* at 136-37.

¶17.     In *Stringer*, the Court of Appeals held that pro se litigants should be held to the same standards as practicing attorneys and that ignorance of public information does not rise to the level of excusable neglect. 822 So. 2d at 1014. Stringer filed suit against American Bankers Insurance Company and other entities instrumental in issuing an appearance bond allowing him release from jail pending a criminal adjudication. *Id.* at 1012. Stringer filed the complaint pro se on July 13, 1992, but Stringer never served American Bankers. *Id.* The summons which Stringer issued lacked an address. *Id.* On March 22, 2000, American Bankers' motion to dismiss was granted pursuant to Miss. R. Civ. P. 4(h). *Id.* at 1013. On appeal, Stringer argued he was incarcerated during the service of process period and the American Bankers' attorney failed to comply with his requests to obtain American Bankers' address for service of

6

process. *Id*. American Bankers pointed out it was registered to do business in Mississippi and had a registered agent for service of process in Mississippi in accordance with state law. *Id.* at 1014. The Court of Appeals agreed. In language condemning the ignorance of pro se litigants as a viable demonstration of good cause, the court stated,

> We agree that a pro se litigant's ignorance of a readily available means, through access to public records maintained specifically for that purpose, of obtaining information to serve an intended defendant in litigation does not rise to the level of excusable neglect under authority holding that pro se litigants must be held to essentially the same standards in the conduct of litigation as are members of the bar licensed to practice before the court.

*Id.* (citing *Ivy v. Merchant*, 666 So. 2d at 449-50).

¶18.     While *LeBlanc*, *Moore*, and *Stringer* encourage a strict compliance standard in the instant case, the Perrys interpret this Court's language in the more recent case of *Holmes* as lending some credence to a substantial compliance standard for pro se plaintiffs under Miss. R. Civ. P. 4(h). Holmes was a bus passenger injured when the bus in which he was riding struck a roadway obstruction. *Holmes*, 815 So. 2d 1183, 1184 (¶ 2). Rather than file suit immediately, Holmes began settlement negotiations with the bus company. *Id.* However, before the statute of limitations expired, Holmes filed a complaint and attempted to serve process on the bus company's chief executive officer by mailing him the complaint and summons along with two Notice and Acknowledgment forms. *Id.* The bus company did not file an answer or return the forms. *Id.* After the period for service of process expired and after Holmes rejected the bus company's final settlement offer, the bus company notified Holmes it had not and would not accept service of process by mail. *Id.* The trial court subsequently dismissed Holmes's case pursuant to Miss. R. Civ. P. 4(h) for failure to effect timely service of process. *Id.* at 1185 (¶ 5).

¶19.    On appeal, this Court rejected Holmes's equitable argument that the bus company misled him into believing it had accepted service by mail and followed the rationale in *Healthcare Compare Corp. v. Super Solutions Corp.*, 151 F.R.D. 114 (D. Minn. 1993). 815 So 2d. at 1186-87. *Healthcare Compare* reasoned, "Plaintiffs would have no incentive to comply with the 120 day limit if they could always find shelter from the rule by claiming that they had begun negotiations in good faith." 151 F.R.D. at 115-16. While we ultimately affirmed the trial court's dismissal, we cited a leading treatise [Wright & Miller] which apparently has offered some comfort to the Perrys in their "substantial compliance" argument. In quoting from Wright & Miller, we stated in *Holmes* that "good cause [for delay of service of process] is likely (but not always) to be found when . . . the plaintiff is proceeding pro se or in forma pauperis." *Holmes*, 815 So. 2d at 1186 (¶ 12) (quoting 4B Federal Practice & Procedure § 1137, at 342).

¶20.    In the case at bar, neither side cites a decision of this Court involving a Rule 4(h) dismissal for failure to timely serve process by a pro se plaintiff. While Mississippi jurisprudence on Miss. R. Civ. P. 4(h) is considerable, this Court has not specifically addressed the good cause standard for pro se plaintiffs. Again, the language in *Holmes*, adopted from Wright & Miller, has caused the Perrys to believe that we created an opening for pro se litigants to claim good cause for delay in service of process by virtue of their pro se status. 815 So. 2d at 1186 (¶ 12). Additionally, the Perrys correctly note that *Healthcare Compare*, on which the *Holmes* decision was based, cautioned that its holding should not be used "to penalize plaintiffs who demonstrate reasonable diligence in effecting timely service on defendants." 151 F.R.D. at 115 (citing *Baden v. Craig-Hallum, Inc.*, 115 F.R.D. 582 (D. Minn. 1987)).

¶21.    Although the Perrys' ignorance of the summons requirement prevented them from fully complying with Miss. R. Civ. P. 4(h), their attempt to comply was more substantial than the plaintiffs' efforts in

*LeBlanc* (in which the plaintiff did not serve process for eleven months purportedly because of cognitive injuries and communication difficulties with her attorney), *Moore* (in which the plaintiff did not locate the defendant at his new address or make any contact with the defendant during the period for service of process), *Stringer* (in which the plaintiff made no contact with the defendant for eight years), and *Holmes* (in which the plaintiff mailed a summons and complaint to the defendant). By contrast, the Perrys, proceeding pro se, attempted to give notice of the lawsuit by hand delivering a copy of the complaint to Dr. Andy at his place of business. When they became aware of the summons requirement, the Perrys had summonses served on Dr. Andy and the Hattiesburg Clinic, seven days after the 120 days for service of process had expired. The Perrys' argument for a good cause exception to the strictures of Miss. R. Civ. P. 4(h) is therefore stronger than the above cited cases.

¶22.     While we are not unsympathetic to the Perrys' equitable arguments concerning substantial compliance, the prevailing case law strongly favors the view that pro se plaintiffs must be held to a strict compliance standard under Miss. R. Civ. P. 4(h). A review of federal jurisprudence on this issue reveals that pro se status in and of itself does not excuse plaintiffs' failures to comply with Rule 4 service of process requirements. *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir.) (stating "pro se litigants are not entitled a general dispensation from the rules of procedure"), *amended on other grounds on denial of rehearing*, 87 F.3d 202 (7th Cir. 1996); *Williams-Guice v. Bd. of Educ. of City of Chicago*, 45 F.3d 161, 164 (7th Cir. 1995) (holding even uncounseled litigants must act within time provided by statutes and rules); *Dunmars v. City of Chicago*, 22 F. Supp. 2d 777, 782 (N.D. Ill. 1998) (holding a pro se litigant's ignorance of the 120-day time limit does not establish good cause under Rule 4); *Barrett v. City of Allentown*, 152 F.R.D. 46 (E.D. Pa. 1993) (finding plaintiffs' pro se status in civil rights action against

9

city did not constitute good cause for failure to serve city within 120 days of filing original complaint); *Sanders v. Fluor Daniel, Inc.*, 151 F.R.D. 138 (M.D. Fla. 1993) (stating pro se status in itself does not constitute good cause), *aff'd mem.* 36 F.3d 93 (11th Cir. 1994); *Scarton v. Charles*, 115 F.R.D. 567 (E.D. Mich. 1987) (holding ignorance of the rules does not constitute good cause); 4B Wright & Miller, Federal Practice & Procedure § 1137, at 342-49 (3d ed. 2000) (stating, "Pro se status or any of the other listed explanations for a failure to make timely service ... is not automatically enough to constitute good cause . . . .").

¶23.    These federal precedents are consistent with this Court's decisions in *Ivy* (pro se plaintiffs should be held to substantially the same standard as bar members) and *Holmes* (good faith efforts do not constitute good cause for failing to effect timely service of process), and with the Mississippi Court of Appeals' holdings in *Moore* (the excusable neglect standard is a very strict standard) and *Stringer* (pro se litigants should be held to the same standards as practicing attorneys such that ignorance of public information does not rise to the level of excusable neglect). Therefore, we hold that pro se plaintiffs must strictly comply with the requirements of Miss. R. Civ. P. 4(h).

## CONCLUSION

¶24.    The trial court did not abuse its discretion in dismissing the Perrys' complaint for failure to serve process within 120 days in accordance with Miss. R. Civ. P. 4(h). Notwithstanding the Perrys' equitable arguments for implementing a substantial compliance standard for pro se plaintiffs in the application of Miss. R. Civ. P. 4(h), such a standard is not supported by the great weight of authority in this State or in the Federal system. Therefore, the judgment of dismissal entered by the Forrest County Circuit Court is affirmed.

¶25.    **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER AND COBB, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. McRAE, P.J., AND EASLEY, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**